# SMITH *v.* GALE.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF
DAKOTA.

No. 225. Argued March 23, 24, 1892. — Decided April 11, 1892.

The right to intervene in a cause, conferred by secs. 89, 90 of the Dakota
Code of Civil Procedure upon a person interested in the subject of a liti-
gation, relates to an immediate and direct interest by which the inter-
venor may either gain or lose by the direct legal operation and effect of
the judgment, and can only be exercised by leave of the court, in the
exercise of its discretion ; and if the request to intervene is made for
the first time in a case which had been pending for two years, and just
as it is about to be tried, it is a reasonable exercise of that discretion to
refuse the request.

Since the enactment of the act of January 6, 1873, (Laws of Dakota Territory,
1872–73, pp. 63, 64,) a deed of land within Dakota executed and ac-
knowledged without the State before a notary public having an official
seal, and certified by him under his hand and official seal, is sufficient to
admit the deed to record and in evidence, without further proof ; and
the fact that the recording officer in making the record of the deed fails
to place upon the record a note of the official seal, does not affect the
admissibility of the original.

When the defendant in his answer admits the execution of an instrument
set up by the plaintiff in his declaration, and claims that it is invalid by
reason of matters set forth in the answer, that instrument is admissible
in evidence.

The finding, in a suit to quiet title, that the plaintiff and her grantees had
been in continued possession of the premises from a given day is the
finding of an ultimate fact, and the sufficiency of the evidence to support
it cannot be considered on appeal.

Possession and cultivation of a portion of a tract under claim of owner-
ship of all, is a constructive possession of all, if the remainder is not in
adverse possession of another.

In Dakota a person purchasing real estate in litigation from the party in
possession, in good faith and without knowledge or notice of the pen-
dency of the litigation, may acquire a good title as against the other party
if no *lis pendens* has been filed.

THIS was an action originally brought by Gale in the
District Court of Minnehaha County, against the widow and
heirs of Daniel G. Shillock, Samuel A. Bentley and Byron

M. Smith, to quiet the title of the plaintiff to certain lands of which it was averred the defendants unjustly claimed to have title in fee.

The following facts are abstracted from the finding of the court:

Both parties claimed title from Margaret Frazier, who, on the 1st day of July, 1864, became grantee of the land in fee by a patent of the United States of that date.

Plaintiff's chain of title was as follows:

1. Power of attorney, Margaret Frazier to William H. Grant, executed December 9, 1868, authorizing him to sell and convey all her real estate in the Territory of Dakota, etc., and to execute a warranty deed of conveyance in her name.

2. Warranty deed, Margaret Frazier by William H. Grant her attorney-in-fact, to Louisa E. Gale, wife of the plaintiff Artemas Gale, executed October 12, 1870, for a consideration of $160. Under this deed the court found that Mrs. Gale entered into possession; caused the property to be surveyed and the boundaries to be marked; and thence to the time of her decease, continued in open, continuous and uninterrupted possession, which possession was continued by Artemas Gale, her husband, and his grantees hereinafter mentioned, who have been, and at the time of the trial, were in actual possession of said premises.

3. Will of Louisa E. Gale, who died June 27, 1880, devising this property to her husband Artemas Gale, the plaintiff. This will was probated July 29, 1880, and filed for record July 5, 1883.

This suit was begun September 27, 1882. During its pendency, and on August 1, 1883, plaintiff Gale conveyed the lands in question to Helen G. McKennan by warranty deed for a valuable consideration, and on August 14, 1883, Helen G. McKennan conveyed an undivided half of the same to Melvin Grigsby.

The defendant's chain of title was as follows:

1. Warranty deed, Margaret Frazier to Oscar Hodgdon, dated May 29, 1872, for a consideration of $500. This deed

was executed eighteen months after the deed to Louisa E. Gale. The court found that there was no other evidence offered or submitted, tending to prove that any consideration was paid for such transfer, or that the grantee Hodgdon did not then have actual notice or knowledge of the prior conveyance of Frazier to Gale, or that at the time Hodgdon was an innocent purchaser of the said property for a valuable consideration, without notice of the outstanding title in Louisa E. Gale.

2. Quit-claim deed by Oscar Hodgdon to defendant Byron M. Smith, executed June 20, 1874, the property being then in the actual and open possession of Louisa E. Gale.

3. Warranty deed, Margaret Frazier to Daniel G. Shillock and to Samuel A. Bentley, executed May 14, 1873. Subsequent to this conveyance Shillock died, leaving a widow and heirs, who, with Smith and Bentley, were made defendants.

It was claimed by defendants that the power of attorney from Frazier to Grant was obtained for the purpose of enabling the latter to locate land scrip owned by Frazier, and selling the land so located; that it was not intended to be used in conveying the land in question; that such use of it was fraudulent; and that Gale and his wife, well knowing these facts, procured Grant to make a deed, under and by virtue of said power of attorney, to Louisa E. Gale. In this connection, however, the court found that Mrs. Gale was an innocent purchaser for a valuable consideration of the property in controversy; that if said power of attorney was procured from Margaret Frazier by fraud, and if the conveyance by Grant to Gale was fraudulently made, the said Louisa E. Gale and Artemas Gale were neither of them cognizant of such facts, and had no knowledge or notice whatever of such alleged fraud; and that Helen G. McKennan was also an innocent purchaser for valuable consideration of said property, and, at the time of the conveyance from Artemas Gale to her, had no notice or knowledge whatever of the pendency of this action, or of the ground upon which Smith claimed an interest in the property.

Upon the day before the case was tried, Margaret Frazier

filed a complaint, denying Gale's possession of the lands, aver-
ring the title to be in Smith, or in herself for the benefit of
Smith, and asked leave of the court to intervene and be made
a defendant. This was refused, and the court found as con-
clusions of law, from the facts above stated, that Artemas
Gale, the plaintiff, was, at the time of the commencement of
the action, the owner in fee; that McKennan and Grigsby
were, at the time of the trial, the owners each of an undivided
half in fee simple; and that the warranty deed from Frazier
to Hodgdon, and the quit-claim deed from Hodgdon to Smith,
and the warranty deed of Frazier to Shillock and Bentley,
were all of them void, and conveyed no title, right, interest
or estate in the said property; and upon these conclusions a
decree was entered, confirming the title in McKennan and
Grigsby. From this decree of the District Court both Smith
and Frazier appealed to the Supreme Court of the Territory,
by which it was affirmed, (30 N. W. Rep. 138; 29 N. W. Rep.
661,) and Smith thereupon appealed to this court. Smith hav-
ing died subsequent to the appeal, the case is now prosecuted
by his executrix.

*Mr. Enoch Totten* and *Mr. Franklin H. Mackey* for appel-
lant.

I. In Dakota the right to have a party brought in in order
that there may be a *complete determination of the controversy*
is not a discretionary matter with the court. The court "*must*
cause them to be brought in,*" and the denial of this right is
error, whether the error takes the form of sustaining a demur-
rer to the complaint of intervention, or in striking the com-
plaint from the files, or in refusing leave to file the complaint.
*Coburn* v. *Smart*, 53 California, 742; *Coffey* v. *Greenfield*, 55
California, 382. Mrs. Frazier should have been allowed to
intervene, as she is the grantor with warranty for a valuable
consideration, of a deed which is attacked as null and void,
and without her there can be no complete determination of
the controversy. *Camp* v. *McGillicuddy*, 10 Iowa, 201.
The New York Code is similar in this respect to that of

Dakota, and in that State it is held that whenever it appears that a complete determination of the controversy cannot be had without the presence of other parties, the code makes it. the *imperative* duty of the court to cause the proper parties to be brought in. *Shaver* v. *Brainard,* 29 Barb. 25. Abundant authority will be found to support this proposition in cases decided under the rule of equity, that in suits by third parties to set aside deeds as void for fraud as against plaintiffs the grantors in the deeds to be declared void must be made parties. *Lawrence* v. *Bank of the Republic,* 35 N. Y. 320; *Beardsley Scythe Co.* v. *Foster,* 36 N. Y. 561; *Lovejoy* v. *Irelan,* 17 Maryland, 525; *S. C.* 79 Am. Dec. 667.

Even in States where the provisions concerning new parties are not so liberal, the courts will allow another party to be brought into the case when his presence is necessary to enable the defendant to set up an equitable defence. *Hiner* v. *Newton,* 30 Wisconsin, 640.

II. The third and fourth assignments of error go to the ruling of the court in admitting in evidence the power of attorney from Margaret Frazier to Wm. H. Grant and the deed of Grant executed in pursuance of said power, without proof of their execution, on the ground that their execution was admitted by the defendant's pleadings.

In the ninth paragraph the defendant sets up a separate and independent defence to the plaintiffs' cause of action, and there we must look for the admissions, if there are any, of the execution of these instruments.

But that defence, being distinct from and independent of all others in the action, and entire in itself, any admission of the power of attorney or of the deed which might find its way into this defence, would not obviate the necessity of proving execution of the deeds when they are denied and put in issue by another defence. *Miller* v. *Chandler,* 59 California, 540; *Nudd* v. *Thompson,* 34 California, 39; *Troy & Rutland Railroad* v. *Kerr,* 17 Barb. 581. The averments of this separate defence are not admissions of anything stated in the complaint; they are the averments of new matter. If, notwithstanding the authorities just above cited, they are to be taken

as admissions at all, then they are to be taken as an entirety. *Mutual Ins. Co.* v. *Newton,* 22 Wall. 32; *Insurance Co.* v. *Higginbotham,* 95 U. S. 380; *Craig* v. *Tappin,* 2 Sandf. Ch. 78.

III. The ninth assignment of error is to the court's finding that the power of attorney from Frazier to Grant was duly recorded. As the consideration of this assignment involves the same question which must be considered with regard to the eleventh assignment of error, which is to the finding of the court that the deed of Grant to Gale was duly recorded, we will consider them together. If defendant has not admitted the execution of these instruments and they are not *duly recorded,* then they were improperly admitted in evidence without proof of execution, and plaintiffs' whole case fails. Or if they were not duly recorded, and the instruments constituting defendant's chain of title were duly recorded, and defendant was a *bona fide* purchaser for value, then also plaintiffs' case fails.

The Dakota Code of Civil Procedure, sec. 493, provides that "every instrument in writing which is acknowledged or proved, and *duly* recorded, is admissible in evidence without further proof." Plaintiffs introduced in evidence, over defendant's objection, certificates of register of deeds on the back of the instruments, purporting to certify that they had been duly recorded. These were not admissible. No statute of this Territory, prior to the present revised codes (1877), requires registers of deeds to make any endorsement whatever on *instruments* recorded by them; therefore, the certificate not having been made in the *performance of a duty* enjoined by law upon the officer, is not evidence of the facts recited in it. *Board of Water Commissioners* v. *Lansing,* 45 N. Y. 19; *Puryear* v. *Beard,* 14 Alabama, 121.

Neither the instruments themselves nor the record of them disclose the certificate of magistracy and authenticity required at the time of their execution and attempted record by section 518 of the Civil Code of 1865–66; and the record does not show that the certificate of acknowledgment attached to either instrument was under the official seal of the officer whose name is subscribed to it. The record of a deed is not con-

structive notice of its existence or contents, unless all the pre-requisites prescribed by law in respect to its registration are observed. *Pringle* v. *Dunn,* 37 Wisconsin, 449; *Buell* v. *Irwin,* 24 Michigan, 145.

It is the deed *" as spread upon the record "* which imports constructive notice, and subsequent purchasers are chargeable with notice *only* of what the *record* shows, and if a deed be properly executed, but defectively recorded, as to subsequent purchasers the *defective record is not notice and cannot be aided* by the production of the original instrument. *Girardin* v. *Lampe,* 58 Wisconsin, 267; *Taylor* v. *Harrison,* 47 Texas, 454; *Wood* v. *Cochrane,* 39 Vermont, 544; *Potter* v. *Dooley,* 55 Vermont, 512; *Frost* v. *Beekman,* 1 Johns. Ch. 288; *Beekman* v. *Frost,* 18 Johns. 544; *S. C.* 9 Am. Dec. 246; *Pringle* v. *Dunn,* 37 Wisconsin, 449; *Chamberlain* v. *Bell,* 7 California, 294; *S. C.* 68 Am. Dec. 260; *Terrell* v. *Andrew County,* 44 Missouri, 309; *Parret* v. *Shawbhut,* 5 Minnesota, 323; *S. C.* 80 Am. Dec. 424.

The certificate made by statute a prerequisite to recording was not attached either to Gale's deed or to the power of attorney. Hence there was no authority for the record of these instruments at the time they were spread upon the record. Nor was this defect cured by the curative act of January 6, 1873, inasmuch as it does not appear *of record* that the official seals of the notaries public who took the acknowl-edgments were impressed upon the instruments. From and after that date an acknowledgment certified by a notary *under his seal* entitled a deed to record without additional certificate, and a record showing a deed acknowledged before a notary and certified by him *under his official* seal was cured and made effective from that date though it lacked the additional certif-icate; but if the notary's seal was wanting from the instru-ment to be recorded in the one case, or from the record to be cured in the other, the additional certificate was as necessary after that act as before. Gale's deed and power of attorney became entitled to record at the time of the passage of this act. He might at that time have caused these instruments to be duly recorded, but he did not. The former attempted

record, however, was not cured, because it did not appear of record that the instruments bore notarial seals, and the same act which cured certain defective certificates limited that cure to cases when the notary's seal appeared.

IV. The 13th and 14th assignments of error go to the question whether Louisa E. Gale was in actual, open, continuous and uninterrupted possession of the property at the time of the making of the deeds of Frazier to Hodgdon and of Hodgdon to Smith.

There was no such possession by Gale as would have been constructive notice to Hodgdon. To affect him with such notice, there must have been an actual, open, notorious and exclusive *occupancy* of the land.

This occupancy and possession must have been unequivocal, not ambiguous or liable to be misunderstood. *McMechan* v. *Griffing*, 3 Pick. 149; *S. C.* 15 Am. Dec. 198; *Brown* v. *Volkening*, 64 N. Y. 76; *Page* v. *Waring*, 76 N. Y. 463; *Thompson* v. *Burhous*, 79 N. Y. 93.

The possession must be such as to arrest attention before it will even put purchasers on inquiry. *Loughridge* v. *Bowland*, 52 Mississippi, 546.

V. The 15th assignment is to the finding that Louisa E. Gale was an innocent purchaser for a valuable consideration. We submit that this finding is not sustained by the evidence.

VI. The last assignment of error is to the finding that Helen G. McKennan and her grantor, Melvin Grigsby, were innocent purchasers without notice of the pending of this action.

Mrs. McKennan was not a purchaser in good faith. She had notice of facts sufficient to put a prudent person upon inquiry. When a person is put upon inquiry he must examine the records or question the grantor or third persons, and if he refrains he is chargeable with whatever he might have learned from such examination and inquiry. *Sergeant* v. *Ingersoll*, 7 Penn. St. 340. Inadequacy of price puts one upon inquiry. Wade on Notice, 13. The relationship of the parties is also to be considered. 2 Pom. Eq. Jur. 29; Wade on Notice, 14.

*Mr. C. K. Davis* for appellees. *Mr. Melvin Grigsby* was with him on the brief.

MR. JUSTICE BROWN delivered the opinion of the court.

This case was tried in the court of original jurisdiction without a jury, upon the amended and supplemental answers of Byron M. Smith and the replies thereto of Gale, Grigsby and McKennan, and was appealed to the Supreme Court of the Territory, and thence to this court, upon exceptions of the defendant Smith to certain proceedings upon said trial.

(1) Error is alleged in the refusal of the court to permit Margaret Frazier to file an intervening complaint, and be joined with defendant Smith as a necessary party to the complete determination of the controversy. By sec. 89 of the Dakota Code of Civil Procedure, respecting parties to civil actions, "the court may determine any controversy between the parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when *a complete determination of the controversy* cannot be had without the presence of other parties, the court must cause them to be brought in." And by sec. 90: "Any person may, before the trial, intervene in any action or proceeding, who has an interest in the matter in litigation, in the success of either party, or an interest against both. An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and the defendant, and is made by complaint, setting forth the grounds upon which the intervention rests, filed *by leave of the court,*" etc. This complaint set forth, in substance, the issue of the patent to the complainant in 1864, and the conveyance to Hodgdon May 29, 1872, and averred that Hodgdon had no knowledge or notice that any person was then in possession of the lands; denied that any person was in possession thereof; further alleged the execution of the deed from Hodgdon to Smith of June 20, 1874; and averred that plaintiff had falsely claimed that he or his wife were in possession of the land, and that by reason thereof the deeds

to Hodgdon and Smith were void. And "this complainant avers that, in case said Smith does not now have the legal title to said land, the legal title to the whole thereof is now in this complainant, and that she now holds the same for the use and benefit of said Smith, his heirs and assigns, and for no one else."

These provisions of the Dakota code above cited are found in the codes of several of the States, and appear to have been originally adopted from Louisiana, wherein it is held by the Supreme Court, interpreting a similar section, that the interest which entitles a party to intervene must be a direct interest, by which the intervening party is to obtain immediate gain or suffer loss by the judgment which may be rendered between the original parties. *Gasquet* v. *Johnson*, 1 La. 425, 431. In *Horn* v. *Volcano Water Co.*, 13 California, 62, 69, the Supreme Court of California had occasion to construe a similar provision of the code of that State, and held, speaking through Mr. Justice Field, now a member of this court, that "the interest mentioned in the statute which entitles a person to intervene in a suit between other parties must be in the matter in litigation, and of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment. . . . To authorize an intervention, therefore, the interest must be that created by a claim to the demand or some part thereof in suit, or lien upon the property, or some part thereof, in suit, or a claim to or lien upon the property, or some part thereof, which is the subject of litigation." In *Lewis* v. *Harwood*, 28 Minnesota, 428, the cases from Louisiana and California were cited with approval. In that case the persons who sought to intervene held attachments upon some property subsequent to those of the plaintiff in the suit. The suit was upon certain promissory notes executed to the plaintiff by the defendants, and the intervenors claimed that the notes were without consideration and fraudulent; that the plaintiff's attachments were fraudulent; and that the suit and attachments were in execution of a collusive scheme between the plaintiff and defendant to defraud the intervenors, who were *bona fide* creditors of the defendant. It was held that the complaint of the intervenors did not dis-

close such an interest in the subject matter of the suit as to
entitle them to intervene, and that the plaintiff's motion to
dismiss the same should be granted. The decision was put
upon the ground that when the judgment was entered against
the defendants, the whole subject matter of the suit was dis-
posed of; and that the writ of attachment was a part of the
remedy and had nothing to do with the cause of action. "If
property is seized by virtue of the writ to which another has a
better right, the vindication of such right involves another
and independent judicial inquiry."

The intervention must be not only to protect the direct and
immediate interest of the intervenor in a suit, but she is
bound to make that interest appear by proper allegations in
her petition. *Coffey* v. *Greenfield*, 62 California, 602. In
this case the petition not only fails to show any title in the
intervenor, and no beneficial claim to or lien upon the prop-
erty in suit, but it shows conclusively that such interest as she
once had has been conveyed away to Hodgdon, and that the
only actual interest she could possibly have in the result of
the litigation was the contingency of being held upon the
covenants of warranty in the deed to Hodgdon. This, how-
ever, is not the direct and immediate interest which, under
the construction given to this statute by the courts of Louisi-
ana, California and Minnesota — a construction which we do
not hesitate to adopt — is necessary in order to entitle a per-
son to intervene. Her liability to Smith would depend upon
the scope of her covenants, and could properly be determined
in a separate action. But it is needless to consider her claim
further, since she has not appealed from the decision of the
court denying her right to intervene, and the appeal of Smith
brings up that question only so far as the ruling of the court
was injurious to *his* interests.

Appellant Smith's argument in this connection is that, under
section 681 of the Dakota Civil Code, " every grant of real
property, other than one made by the Territory, or under a
judicial sale, is void, if at the time of the delivery thereof such
real property is in the actual possession of a person claiming
under a title adverse to that of the grantor;" that, as the

Gales were in adverse possession of this land under a claim of title, when the deed to Hodgdon was delivered, such deed, under the provisions of this section, was void, and conveyed no title to Hodgdon, nor did Hodgdon's deed to himself, and hence that he did not stand in a position to resist the claim of Gale, and that his rights could only be determined in a suit to which Margaret Frazier was a party, since she was in a position to claim that the deed to Mrs. Gale was void by reason of her fraudulent connivance with Grant. For these reasons he claims that the title to these lands is, as against the Gales, still in Margaret Frazier, and that, if she succeeded in showing that her deed to the Gales was void by reason of fraud, her title would enure to his use and benefit, under the deed to Hodgdon and that from Hodgdon to himself. In this connection he calls the attention of the court to a number of cases holding that a deed of land held in adverse possession is good as against the grantor and his heirs, and against strangers, though void as against the party in possession; and that, it being void as against the latter, an action would lie against him in the name of the grantor, notwithstanding such deed, but not in the name of the grantee. A recovery therein, however, will enure to the benefit of the grantee. *Hamilton* v. *Wright*, 37 N. Y. 502; *Hasbrouck* v. *Bunce*, 62 N. Y. 475, 482; *Chamberlain* v. *Taylor*, 92 N. Y. 348; *Farnum* v. *Peterson*, 111 Mass. 148, 151; *McMahan* v. *Bowe*, 114 Mass. 140.

There is great plausibility in this position, and we are not disposed to hold that the court might not have permitted this complaint in intervention to be filed. But by section 90 of the code, above cited, such complaint must be filed *by leave of the court*, a limitation upon the right to intervene which presupposes a certain amount of discretion in the court. Such right ought to be claimed within a reasonable time, and may be properly refused in a case like the present one, where the action had been pending two years, and was about to be tried. *Hocker* v. *Kelley*, 14 California, 164.

There were other circumstances in this case which doubtless had their influence in determining the court not to permit this complaint to be filed. The Gales had been in adverse

possession of the land for nearly twelve years under a claim of title, and, according to the facts found by the court, had broken and cultivated about twenty acres. Hodgdon had received his deed eighteen months after the deed to Gale, and Smith had received his deed from Hodgdon in 1874, nearly eight years before this suit was begun by Gale to quiet his title. Although these parties were chargeable with notice of the fact that the Gales were in open and notorious possession of this land, yet, during all this time, they made no movement looking toward an assertion of their own title to it. While, under the cases from New York and Massachusetts above cited, they might not have been able to institute a suit in their own name against Gale, they might have instituted an action against him in the name of their grantor, Frazier, and a recovery thereunder would have enured to their benefit. Instead of that they lay by for eighteen months after the suit was begun, and then, upon the eve of the trial, after Smith had filed an original, an amended and a supplemental answer, he asked that Frazier be permitted to intervene and set up her title as against Gale. Under this state of facts the court might not unreasonably hold that the application came too late; and that if Smith desired to assert any rights in the name of Frazier he should take the initiative and file a bill in her name to annul the deed to Gale upon the ground of fraud.

(2) Several assignments of error relate to the ruling of the court admitting in evidence the power of attorney from Frazier to Grant, and the deed executed in pursuance of such power. These instruments were executed in Minnesota; were acknowledged before a notary public of Ramsey County in that State, who certified to the same under his official seal, and to this acknowledgment was appended a certificate of the Secretary of State of Minnesota, to the effect that the notary taking the acknowledgment had been duly appointed and qualified, etc.; that full faith and credit were due to his official acts; and that his signature was genuine, and the instrument executed and acknowledged in accordance with the laws of the State. Endorsed upon these instruments was the certificate of the register of deeds of Minnehaha County, Dakota,

that they had been filed for record in August, 1871. Objection was made to the admission of these conveyances upon the ground that, having been executed without the State, the certificate of the officer taking the acknowledgment ought to have been " accompanied by a certificate under the name and official seal of the clerk, register, recorder or prothonotary of the county in which such officer resides . . . specifying that such officer was at the time of taking the proof or acknowledgment duly authorized," etc., as required by section 528 of the Civil Code of 1865–66. Under this statute, the certificate of the secretary of State was insufficient and immaterial.

In January, 1873, after these instruments were executed, an act was passed by the legislature of Dakota providing "that the proof or acknowledgment of any deed, mortgage or other instrument may be made either within or without this Territory and within the United States, before any public officer *having an official seal,* including notaries public," etc. "Sec. 2. Whenever the proof or acknowledgment of any deed, mortgage or other instrument is certified by a public officer having an official seal, *under his hand and seal,* it shall be a sufficient authentication of such instrument to entitle it to record," etc. By sec. 5 : " All *records* of instruments *heretofore* made in any of the counties of the Territory, the acknowledgment and certificate of which instruments are taken and certified by the officers, and in the manner herein provided, shall, from and after the taking effect of this act, have the same force and effect as though such certificates of acknowledgment were accompanied by the additional certificates heretofore required by law."

This curative act did away with the necessity of any certificate additional to that of the notary public, provided the latter certified to the acknowledgment under his hand and seal. The certificates upon the original instruments were attested by an official seal. It seems, however, that in putting these instruments upon record in the register's office in the county of Minnehaha, the scrivener omitted to make a similitude on the record of the notarial seal, or a scroll or symbol to indi-

cate it, and the defendant introduced the record books in which these instruments had been recorded to show this fact. It was claimed at this point that the deeds did not prove themselves, as they had not been duly recorded. By section 493 of the Dakota Code of Civil Procedure it is enacted that " every instrument in writing, which is acknowledged or proved, and *duly recorded*, is admissible in evidence without further proof."

These instruments, however, under the curative act of 1873, were perfect upon their face, the certificate of the secretary of State being mere surplusage, and that of the notary being accompanied by his official seal. Now, while section 5 of this act makes the *records* of instruments heretofore made evidence, notwithstanding the want of a certificate of authorization, it ought not to be held that the original instrument, which is perfect upon its face, is made inadmissible by the fact that the record of such instrument has omitted the official seal of the notary. The record of the instrument is really but secondary evidence, although by statute it is made primary; and it would be sticking in the bark to hold that the original instrument, having the official seal of the notary to the acknowledgment, should be defeated by the fact that in recording such instrument the seal was accidentally omitted. The record of such instrument might thereby become inadmissible as a substitute for the original, but so slight an omission as this in the record ought not to defeat the original instrument as evidence. *Starkweather* v. *Martin*, 28 Michigan, 472. It would be a singular perversion of the principles of natural justice if, with a perfect deed before the court and a record which lacked only a scrawl or other symbol of a seal, neither could be admitted in evidence by reason of the fact that they did not exactly correspond, or, to speak more accurately, were not exactly identical, especially when the record could be amended on the spot by adding the representation of a seal. The court should not permit such a plain defeat of justice as this would be, by an obstinate adherence to a statutory requirement.

But, if there were any doubts regarding the admissibility of these documents, we think they are resolved by the allegations

of the amended answer of Smith, wherein, after denying in
general terms that Frazier by her warranty deed, or in any
other way, sold or conveyed to Gale the land in question, he
proceeds to allege that Grant on December 9, 1868, offered to
take her scrip and locate the same upon such of the public
lands as he might select, if she would execute to him a power
authorizing him to convey the same to whomsoever he should
elect ; that she assented to this, and thereupon he presented
her a power of attorney in writing, bearing the above date,
which he had himself drawn up, representing to her that · he
would only use it to sell the lands located by the scrip ; that
thereupon she executed the same ; and that subsequently the
Gales, knowing all these facts, fraudulently procured Grant
on the 12th day of October, 1870, to execute and deliver to
Louisa E. Gale a deed of the lands in question ; and that Fra-
zier never received any consideration for the same. Taking
all these allegations together, they constitute a clear admission
that a power of attorney and deed corresponding in descrip-
tion to those offered in evidence were executed upon the days
these respectively bear date, but that the same were made use
of for the fraudulent purpose of conveying other lands than
those intended by Frazier when she executed the power of
attorney. The allegations, however, were broad enough to
admit the instruments without further proof of their execution
or delivery, subject to any attack which the defendant might·
choose to make upon the manner in which they had been pro-
cured, and the use which had been made of them. It is true
that when a general denial is pleaded in connection with a
special defence of new matter, or two inconsistent defences
are set up, the admissions in the one cannot be used to destroy
the effect of the other. *Glenn* v. *Sumner*, 132 U. S. 152, 157.
In this case, however, there are no inconsistent defences ; the
general denial itself is qualified by a denial of each and every
allegation of the complaint " not expressly admitted ; " the
defence is, in reality, a single one, namely, that Frazier did
not sell or convey to Gale the land in question, although she
did execute a power of attorney, on its face authorizing Grant
to convey according to its terms ; and that he did in pursuance

of such power assume to execute and deliver to Mrs. Gale a deed of this property. The admission of the actual execution and delivery of these instruments, as they appear upon their face, is as clear and distinct as the denial of their legal effect. *Cook* v. *Barr*, 44 N. Y. 156; *Shafter* v. *Richards*, 14 California, 125; *Philadelphia &c. Railroad* v. *Howard*, 13 How. 307; *Hartwell* v. *Page*, 14 Wisconsin, 49; *Derby* v. *Gallup*, 5 Minnesota, 119; *Barnum* v. *Kennedy*, 21 Kansas, 181.

(3) The thirteenth and fourteenth assignments of error relate to the sufficiency and notoriety of Mrs. Gale's possession to charge Hodgdon and Smith with notice of her claim to the land, in case the record of her deed was not of itself sufficient notice.

In this connection the court below found as a fact that on or about the 15th day of June, 1871, the said Louisa E. Gale took actual possession of such real property; "that among other acts of possession and ownership she then caused said real property to be surveyed, and the boundaries thereof to be marked by mounds and stakes; she caused to be broken and cultivated a portion thereof along the north side, consisting of about ten acres; that subsequently, during the year 1874, she caused to be broken and cultivated about ten acres more of said land, and that, continuously from and after the spring of 1871 to the time of her decease and devise to this plaintiff, Artemas Gale, she continued to openly use, occupy and possess said real property, and that such possession and occupation were actual, open, continuous and uninterrupted, and that such occupation and possession of said premises have been continuous by her devisee, said Artemas Gale, and his grantees, the said Helen G. McKennan and the said Melvin Grigsby," etc. This finding of possession is, under the case of *Mining Co.* v. *Taylor*, 100 U. S. 37, the finding of an ultimate fact and has the same legal effect as the finding of a jury in a special verdict, and the sufficiency of the evidence to support the finding cannot be considered upon this appeal. *Idaho &c. Land Co.* v. *Bradbury*, 132 U. S. 509, 514.

While their actual occupancy and cultivation of the property did not apparently extend to the entire tract, we think it

was sufficient, under the case of *Ellicott* v. *Pearl*, 10 Pet. 412, to give the Gales a constructive possession of the whole tract, the remainder not being in the adverse possession of anybody. In that case it was held that where there has been an entry on land under color of title by deed, the possession is deemed to extend to the bounds of that deed, although the actual settlement and improvements are on a small parcel only of the tract. In such case, where there is no adverse possession, the law construes the entry to be coextensive with the grant to the party, upon the ground that it is his clear intention to assert such possession. So also *Ewing* v. *Burnet*, 11 Pet. 41, 52; *Brobst* v. *Brock*, 10 Wall. 519, 532; *Hunnicutt* v. *Peyton*, 102 U. S. 333.

We think there is nothing in section 46 of the Dakota Code of Civil Procedure which, fairly construed, conflicts with this view. Certainly, if there were any doubt in this matter, the finding of possession by the court below would be sufficient to turn the scale in the plaintiff's favor.

(4) There is also an assignment of error to the finding that Helen G. McKennan and her grantee Grigsby were innocent purchasers without notice of the pendency of the action. The defendant Smith, by his supplemental answer, alleged that they were not purchasers in good faith, nor for a valuable consideration, and that they purchased with notice. To this McKennan and Grigsby made denial.

In order to charge purchasers of property with notice of the pendency of a suit, it is necessary, under the statutes of Dakota, to file a *lis pendens* with the register of deeds of the county in which the land is situated, containing the names of the parties, the object of the action, and a description of the property. There appears to have been no *lis pendens* filed in this case, and hence no constructive notice of the suit. As the court finds that Mrs. McKennan was an innocent purchaser of the property for a valuable consideration, and had no notice or knowledge of the pendency of the action, or of the ground upon which defendant Smith claimed an interest in the property; and as there is no evidence to contradict this, we know of no reason why she or Grigsby should not be held

to have acquired a good title to the property, although purchased during the pendency of this litigation, and although the title which Mrs. Gale acquired might have been impeachable for fraud. It is true that Mrs. McKennan was a sister of Gale, living in Rochester, N. Y., and bought the property while on a visit to her brother; but she swears that she paid $8000 for it, and there is nothing above the dignity of a suspicion to contradict her.

Several other errors in the action of the court below are set up in the assignment, but they are either immaterial or have been already disposed of in the assignments passed upon.

The judgment of the court below will, therefore, be

*Affirmed, and the mandate will issue to the Supreme Court of South Dakota.*