DONOHOO, et al, vs HOWARD, et al.

Opinion delivered September 25, 1902.

1. *Indian Lands—Improvements of Intruders—Sale of—Right of Purchaser to Re-sell—Forfeiture.*

An act of Cherokee council of September 30, 1895, amended December 21, 1895, provided for the sale, to Cherokee bidders, of improvements of "intruders" and required payment of purchase price in six equal installments, without commutation, and that a forfeiture of the improvements and payments made thereon should follow any failure to pay an annual installment and also from any re-sale before payment of the last installment. *Held,* that a purchaser of such improvements who sold before payment of last installment conveyed no title and his transferee could maintain no action of ejectment, notwithstanding the Cherokee Nation was demanding no forfeiture.

2. *Indian Laws—Construction of Cherokee Law for Sale of Intruder's Improvements.*

The act of Cherokee council of September 30, 1895, amended December 21, 1895, provided for the sale of improvements of "intruders" on Indian lands, and for payment in six annual installments and providing for a forfeiture in case of default in any payment or for a transfer before payment of last installment, *Held,* that the provisions of this act can only be construed as placing a limitation, for the time mentioned on the right of alienation of such lands.

(29)

3. *Ejectment—Parties—Intervention—Indian Nation.*

In an action of ejectment brought by parties whose grantor was a purchaser of "intruders" improvements under Act of Cherokee council, a plea of intervention was filed by the Cherokee Nation alleging that a portion of the purchase price had not been paid by the plaintiff's grantor and that it had an interest in the improvements to the extent of the unpaid deferred payments and praying that if plaintiff do not recover, that it have judgment for possession. *Held,* that the plea of intervention was properly dismissed, it failing to show such an interest in the property as would entitle it to intervene under section 4946 Mansfield Digest (Sec. 3151, Ind. Ter. Stat.)

4. *Ejectment—Tender of Purchase Price—To Whom Repaid.*

In an action of ejectment, plaintiff claimed title through purchase, by his grantor, of the improvements and right of possession of the land, from the Cherokee Nation under act of Cherokee council, and admitting that certain installments of the purchase price were unpaid, tendered same into court to be paid to the Cherokee Nation, which had intervened conditioned upon his, plaintiff's recovery in the action. *Held,* on sustaining a demurrer to the complaint and rendering judgment against him, that the money should be repaid to the plaintiff. *Held,* also that as plaintiff had acquired no title from his grantor the money belonged to him, regardless of the condition upon which it was paid into court.

5. *Ejectment—Receiver—Intervention.*

Pending an action of ejectment, in which the Cherokee Nation had intervened, claiming an interest in the improvements because of non-payment of part of the purchase price thereof, a Receiver was appointed and took possession of the property receiving rent and profits therefrom. Upon trial the plaintiff was held to have failed to show title, and the intervenor was held to have shown no sufficient interest to entitle it to intervene. *Held,* that the court properly ordered the moneys in hands of receiver paid over to the defendant

Appeal from the United States Court for the Northern District.

JOSEPH A. GILL, Judge.

Ejectment by P. Donohoo against I. J. Howard and others, in which the Cherokee Nation intervenes. Judgment dismissing the suit and striking out the plea of intervention. Plaintiff and intervener appeal. Affirmed.

This was an action originally commenced by P. Donohoo against the appellees, I. J. Howard, Georgiana Howard, and Isaac Maxey, to recover possession of a farm or improvement known as the "Jerry Hubbard Improvements," located about four miles north of Afton, Ind. Ter., containing about 190 acres. The complaint, after alleging the citizenship of plaintiff, and the number of his minor children, and the shares they were entitled to in allotment, sets out that the improvements on the land in question were, after being found to be an intruder improvement, sold, in accordance with the acts of the Cherokee National council to S. C. Wallen, on April, 9 1898, and that a certificate of purchase was made to him by the sheriff; that on November 29, 1899, Wallen sold the improvements, with what right he had therein, to the plaintiff. Then the plaintiff makes the general allegation that he is the owner, and entitled to the possession of, the place and improvements, and has been since November 29, 1899, and that the appellees have detained it from him after demand for possession. The complaint is verified, and with it, and made parts of it are the acts of the Cherokee national council pertaining to the matter as well as the certificate of purchase, and the bill of sale from purchaser to plaintiff, and the notice to vacate. Complaint was filed January 6, 1900. May 5, 1900, appellees filed demurrer to the complaint. According to the record, no formal disposition was made of this demurrer, but on December 6, 1900, answer was filed, setting up a purchase under section 4 of the Curtis Bill (Ind. Ter. St. 1899, § 57t) on August 13, 1898, alleging that it was made since 1886, and setting

up the fact that the place was never declared an intruder improvement, and denying that it was advertised as required, and alleging that S. C. Wallen was not at the time of the purchase a citizen of the Cherokee Nation. At the same time, exceptions were filed to the admissibility of the documents relied on. On February 15, 1901, the Cherokee Nation appeared in open court and filed a plea of intervention, setting up its interest in the land, and that the improvement was an intruder improvement, and had been so declared, and had been made by a rejected claimant. It further claimed that the premises had been sold as required by the acts of the Cherokee national council, and refers to the complaint of the plaintiff for a copy of the certificate and the acts of the Cherokee national council. It sets out its interest in the premises, and asks for a recovery in the event plaintiff does not recover. On February 15, 1901, the plaintiff answered the plea of intervention, and tendered into court for the Cherokee Nation the two installments that were due, and asked that he be placed in possession, and the nation be allowed to recover the installments and that he be credited with the amount. In July, 1901, the plaintiff P. Donohoo and the Cherokee Nation, as plaintiffs, filed an application for the appointment of a receiver, which was granted, and the receiver gave bond and qualified. On January 30, 1902, defendants filed a demurrer to the complaint which was sustained, and the plaintiff was allowed to amend. On January 31, 1902, the defendant filed a motion to strike the plea of intervention from the files, and on the same day filed a demurrer to amended complaint. The demurrer was sustained and plaintiff declining to plead further, his cause was dismissed at his cost, to which exceptions were saved. The court then dismissed the plea of intervention, to which the Cherokee Nation excepted. The money paid in was ordered returned to plaintiff, which he declined to accept. On March 18, 1902, the plaintiff Donohoo and the Cherokee Nation prayed an appeal, which was allowed.

*W. H. Kornegay* and *J. S. Davenport*, for appellants.

*Preston S. Davis*, for appellees.

CLAYTON, J.   The appellants, with their brief, file the following specifications of error: "(1) The court erred in sustaining the demurrer to the complaint.   (2) The court erred in dismissing the suit.   (3) The court erred in striking out the plea of intervention.   (4) The court erred in dismissing the intervention.   (5) The court erred in ordering the money for the installments delivered to plaintiff.   (6) The court erred in ordering the money derived from the receivership paid to defendant."

The first and second specifications of error raise the single question as to whether the court erred in sustaining the demurrer to the complaint, and dismissing the suit of plaintiff Donohoo. The complaint, with its exhibits, which are a part of it, in substance alleges that the premises in controversy were purchased by the grantor of the plaintiff at a sale made by the sheriff of Delaware district of the Cherokee Nation under and by virtue of the power vested in him by the act of the council of the Cherokee Nation, approved September 30, 1895, and amended December 21, 1895, which are exhibited with the complaint, and made a part thereof.   The said act, as amended, provided that improvements erected on Cherokee lands by "intruders," which have been voluntarily relinquished by them, or from which the United States shall have expelled them in compliance with the stipulations of treaty, shall, under the conditions of said act be sold at public auction to Cherokee bidders.   It further provides that the payments shall be made in six equal annual installments, and that a failure to pay cither of them within three months after becoming due shall work a forfeiture to the nation of the improvements and all previous payments.   It also

provides that "a like forfeiture shall follow from any transfer of the improvements by the purchaser under this act before the last installment is paid. And no commutation of payment is permitted." The purchaser at the sheriff's sale, who was the grantor of the plaintiff, without having been put in possession, sold the premises to the plaintiff, and executed to him a bill of sale therefor, when only one annual installment of the purchase money had been paid, and this suit was brought after two other of the annual installments were more than three months past due. One of the questions, and the controlling one, raised by the demurrer, is, did this transaction, conceding the regularity of the sheriff's sale, pass such title to the plaintiff as would support an action of ejectment? It is argued that inasmuch as the law simply provided for a forfeiture, it is a matter that concerns the Cherokee Nation alone, and, if it sees fit to condone the offense and stand upon the contract, it can do so, and that the nation by its intervention is making no demand for the forfeiture, but, standing, upon the contract, is demanding only the purchase price. And this would probably be true if the purchaser at the sale were the party plaintiff in this suit. But he is not. The plaintiff purchased from a man who was bound by the terms of his grant not to transfer; and was forbidden by public law to sell; and the question is, not did his grantor forfeit his title by his act, but did he convey title by his deed? The plaintiff's grantor at the will of the Cherokee Nation, may still have title, but the plaintiff has none. One of the terms of the grant, as expressed by the statute from which the sheriff got his power to sell, and the plaintiff's grantor his right to buy, was that the premises should be inalienable for five years, at least. It provides, in effect, that the lands shall not be transferred by the purchaser at the sale until the last annual installment shall have been paid, and there were six of them, and there was to be no commutation. Each annual installment was to be paid when it fell due, and not before,—the first immediately, and the last at the beginning

of the sixth year.  We think that no other construction can be placed on this statute, but that it is a limitation on the right of alienation for the time mentioned.  It is true that the statute does not state in so many words that the purchaser should not have the right to transfer the premises until the payment of the last annual installment, but it unquestionably does so in effect. The language is:  "A forfeiture shall follow from any transfer of the improvements by the purchaser under this act before the last installment is paid; and no commutation of payment is permitted."  The evident intention of the Cherokee legislature was that title should be retained in the purchaser until the last installment should be paid.  It was a declaration of the public policy of the Cherokee Nation, ingrafted in a public law, that the land should be inalienable until that time.  And therefore the attempted sale of the purchaser to the plaintiff was void, the sale and deed conveyed no title, and the plaintiff has no standing in this action of ejectment.  We hold, therefore, that the court below did not err in sustaining the demurrer to the complaint, and dismissing the suit as to the plaintiff.

The third and fourth specificatoins of error relate to the action of the court in striking out and dismissing the intervention. The defendant filed no answer to the plea of intervnetion, but moved the court to strike out the plea and dismiss the intervention on the following grounds:  "(1) That the intervener set up an independent title to that claimed by the parties to the suit. (2) That said intervention is contrary to law, and not authorized by the rules of pleading and practice in force in this jurisdiction. (3) That said intervention shows no right in the intervener to be joined or permitted to interfere in this case.  (4) That neither the plaintiff nor the defendant are in any way attacking the right of property or possession, nor are they seeking any judgment against the intervener."

Section 4946, Mansf. Dig. (Ind. Ter. St. 1899, § 3151), provides: "Where in an action for the recovery of real or personal

property any person having an interest in the property, applies to be made a party, the court may order it to be done." This statute does not mean that in an action of ejectment every person who may have an interest in the land, which is not and cannot be effected by the result of the suit, one way or the other, may intervene, for in such case he could recover nothing by the judgment, nor could any right of his be affected. In such a case he would be an intermeddler. The statue simply means that he must have an interest in the object of the suit. The mere fact that he has an interest in the thing which is the subject of controversy will not be sufficient. The supreme court of California, in which State the right of intervention has been most liberally construed, in the case of Horn vs Water Co., 13 Cal. 70, 73 Am. Dec. 569, say: "The interest mentioned in the statute which entitles a person to intervene in a suit between other parties, must be in the matter in litigatoin, and of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation and effect of the judgment. To authorize an intervention, therefore, the interest must be that created by a claim to the demand, or some part thereof, in a suit or a claim to or lien upon the property, or some part thereof, which is the subject of litigation." The supreme court of the United States ,in the case of Smith vs Gale, 144 U. S. 509, 12 Sup. Ct. 674, 36 L. Ed. 521, has decided this question to the same effect. In this case the plea of intervention sets up the Cherokee Nation's title; that one Jerry Hubbard, the grantor of the defendant, had made the improvements on the place in controversy under the claim of citizenship, which claim had been adjudged against him by a final judgment of a court, and that pursuant to law in such case the Cherokee Nation had, through the sheriff of Delaware district, sold the improvements to one S. C. Wallen, a Cherokee citizen, and the grantor of the plaintiff Donohoo, which, under the law, carried with it the right of possession of the land upon which

they were erected; that the second and third deferred payments were past due and unpaid, and that the fourth, fifth, and sixth payments were not yet due; and that the Cherokee Nation had an interest in the improvements to the extent of the deferred payments. It denies the title of Jerry Hubbard, and therefore that his conveyance to the defendant conveyed any title. Its only prayer is, "that, upon the failure of plaintiff to recover, that it have judgment for the possession of the lands and improvements, and for rent from January, 1898." The whole purpose of the intervention was, in case of the failure of the plaintiff to recover, that the court by its judgment would direct that the possession of the lands and improvements and back rents be given to the intervener. The mention of the unpaid installments of the purchase money arising out of the sheriff's sale was only for the purpose of showing the interest of the Cherokee Nation in the subject-matter of the suit, and the plea of intervention expressly so states. But had there been a claim for the money, the intervener would have been in no better condition, for neither of the parties to the suit owed it anything on that account. The sale to the plaintiff, being void, created no privity between him and the intervener. If there were anything due the nation on account of the sheriff's sale, it was Wallen, the purchaser at the sale, who owed it, and he was not a party to the suit. Having held that the sale of the premises by Wallen to plaintiff was void, it necessarily follows that the obligation to pay the deferred installments falls with the contract, and therefore the Cherokee Nation has no interest in the suit because of that. When the court below reached the conclusion that the sale was void, and dismissed the plaintiff from the suit for want of title, there was no possible judgment it could render in favor of the intervener. It could do nothing but dismiss it from the suit and give judgment for the defendant. But it is claimed that because the Cherokee Nation asserts title to the land, that is sufficient to show such an interest in the suit as to give the court

jurisdiction to try the issue between it and the defendant after the plaintiff had been dismissed. The fallacy of this contention will be seen when it is considered that the Cherokee Nation, except by its prayer, makes no claim to the possession of the premises. It says by its plea that, notwithstanding its legal title, it has lawfully sold its right to the possession and is insisting that that sale is a valid one. Had the purchaser at the sale been a party to the suit, and the nation were in court, insisting upon its forfeiture, there might be some virtue in this position. The suit was for the possession of the premises, and neither of the parties to it was attacking the title of the intervener, and no judgment could have been rendered in it that could in the remotest degree have affected its right or its title in and to the improvements or the land. If it be said that the law under which the sale was made required the Cherokee Nation, through its sheriff, to put the purchaser in possession, and therefore it would have that interest in the suit, and that it was in court for the purpose of upholding the title of its grantee and of putting him in possession, the answer is that its grantee is not in court; the court had no jurisdiction over him to put him in possession or to adjudge his title. Besides, that is not the prayer of the intervener. It asks to be put in possession itself, notwithstanding the fact that it has sold the right to another. We therefore hold that the court below did not err in dismissing the Cherokee Nation from the suit.

The fourth specification of error is that the court erred in ordering the money for the installments delivered to plaintiff. We suppose that this means that the court erred in ordering the money that had been deposited by plaintiff in court to be paid to the Cherokee Nation in case plaintiff prevailed, to be returned to plaintiff. There are two answers to this: First, that the money was deposited in court by plaintiff upon the express stipulation that it was to be paid to the Cherokee Nation only

in the event that the plaintiff should prevail in the suit. He failed. Second, that the money belonged to the plaintiff. The Cherokee Nation had no interest in it.

The sixth specification of error is that the court erred in ordering the money derived from the receivership paid to defendant. The answer to this is that there was no other person to whom the court could pay the money. It was derived from the rents and profits of the place while in the hands of the receiver, of which possession had been wrested by order of the court from the defendant. The Cherokee Nation had sold its right to the rents and profits, and the plaintiff took nothing by its purchase of the purchase of the premises. The defendant had prevailed in the suit. To whom else could the money have been paid?

Finding no error in the judgmnet of the court below, it is affirmed.