## TERRITORY OF ALASKA v. ANNETTE ISLAND PACKING CO. (FALL, Secretary of Interior, Intervener).

(Circuit Court of Appeals, Ninth Circuit. May 28, 1923.)

No. 3907.

1. **Licenses** ⊂⇒3—**Territory of Alaska held not authorized to levy occupation license and income tax upon corporation conducting salmon cannery on Indian island to enable Indians to become self-supporting.**

   Where government lease to a packing company of a site for salmon cannery on an Indian island reservation, Annette Island, Alaska, required the lessor to employ Indian labor so far as possible, such a lease was an instrumentality of the government to assist the Indians to become self-supporting, and hence the territory of Alaska could not collect occupation licenses and income taxes from the corporation; no such power being given it by Organic Act, § 3, and it being immaterial that the Indians on the island were not tribal, and that the majority of them were citizens of the United States by virtue of their having been born on the soil of the United States, and that certain of the Indians were British subjects before their immigration to the United States, in view of Act March 3, 1891, § 15 (Comp. St. § 5096a).

2. **Indians** ⊂⇒27(1)—**United States** ⊂⇒126—**Secretary of Interior held authorized to intervene in action to collect income tax on government instrumentality to assist Indians to self-support.**

   In action by territory of Alaska to collect occupation tax from a salmon packing company operating on an Indian island reservation under arrangement with the government to assist the Indians on the reservation to become self-supporting, the defense being that the tax was upon a government instrumentality, the Secretary of Interior had the right to intervene in the interest of the Indians.

In Error to the District Court of the United States for the Territory of Alaska; Thos. M. Reed, Judge.

Action by the Territory of Alaska against the Annette Island Packing Company, in which Albert B. Fall, as Secretary of the Interior, intervened for and on behalf of the people of Annette Islands Reserve. Judgment dismissing the complaint, and the Territory brings error. Affirmed.

James Wickersham, of Juneau, Alaska, for plaintiff in error.

Hiram E. Hadley, Edgar S. Hadley, Clyde M. Hadley, and Edward M. Hay, all of Seattle, Wash., for defendant in error Annette Island Packing Co.

---

⊂⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Arthur G. Shoup, U. S. Atty., of Ketchikan, Alaska, for intervener Fall.

Before GILBERT and RUDKIN, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. The territory of Alaska brought an action to collect certain sums of money alleged to be owing it as occupation licenses and income taxes from the Annette Island Packing Company, a corporation of the state of Washington engaged in catching and packing salmon on the Annette Islands in the territory of Alaska. The Secretary of the Interior intervened for and on behalf of the Indians residing on said Islands. The cause was submitted to the court below on the pleadings and an agreed statement of facts. Judgment was entered dismissing the complaint.

The Indians on the Annette Islands were formerly inhabitants of British Columbia. In the year 1887, they were encouraged by officers of the government of the United States to emigrate to Alaska, and from 800 to 1,200 Metlakahtla Indians emigrated from British Columbia and settled upon Annette Island. Their action was sanctioned by Congress in the Act of March 3, 1891, 26 Stat. 1101. That act provided that the Annette Islands be set apart as a reservation for the use of the Metlakahtla Indians and such other Alaskan natives as might join them, to be held and used by them in common "under such rules and regulations, and subject to such restrictions, as may be prescribed from time to time by the Secretary of the Interior." Comp. St. § 5096a. About 50 Thlinket and other Alaska Indians joined the Metlakahtla Indians in their settlement. Rules and regulations governing their use of the islands so reserved were made by the Secretary of the Interior on January 25, 1915. On February 11, 1915, the Secretary of the Interior approved the rule and order of the Commissioner of the Bureau of Education for the issuance of permits to the natives to erect salmon traps on the shore of the Islands. From and after the act of 1891 creating the reservation, all schools for the education of the Indians thereon residing have been maintained by the United States, and supervision over the affairs of the Indians has in a general way been exercised by the United States. The Indians have had the exclusive use of all the lands in the reservation. White men have not been permitted to use or occupy any thereof for any purpose. The Indians have erected for themselves houses and buildings, but the title to the land has remained in the United States, and the reservation has been used in common for hunting, fishing, timber cutting, and lumber making by the Indians. On January 25, 1915, the United States took active charge and supervision of the affairs of the Indians. On April 30, 1917, the Secretary of the Interior leased to the Annette Island Packing Company a site for cannery buildings and fish-trap rights on the reservation, and gave it an exclusive right of fishing in the waters belonging thereto. The lease required the lessee, among other things, to purchase all piling lumber and material possible from the Indians at market values, to employ the Indians in connection with the erection of traps and buildings so far as possible, to co-operate with the Commercial Com-

pany of the Indians in every way possible, to employ native labor, as far as possible, in the manufacture of cans and salmon packing, and to purchase from the Indians all requisite box shooks and lumber at market prices.

The court below found that the lease of the cannery and equipment was an instrumentality of the government for the purpose of assisting the Indians to become self-supporting, that the tax sought to be levied is in the nature of a license tax imposed upon an instrumentality of the government, and that the levy of such taxes, being a direct tax on an instrumentality of the government used in carrying on its business, was void.

[1] The plaintiff in error asserts that the point at issue here is whether a foreign corporation engaged in canning salmon on Annette Island in Alaska is compellable to pay a territorial tax levied against it based on the output of its cannery, in common with all other persons and corporations engaged in a similar business in the territory, and contends that decision of the question is ruled by Talbott v. Silver Bow County, 139 U. S. 438, 11 Sup. Ct. 594, 35 L. Ed. 210. In that case the court held that the territories possess the same power to tax national banks which the states possess, and reached that conclusion upon the construction of a statute which vested such power of taxation in the states; holding that it was the intention of Congress to include the territories in that grant of power. The court said that without such expressed power to tax, the national banks, being instrumentalities of the government, were not subject to taxation by state or territory. The plaintiff in error contends that like power of taxation has been by Congress vested in the territorial Legislature of Alaska, and cites section 410, Compiled Laws of Alaska of 1913, and section 3 of the Organic Act of the Territory, which in granting power to tax provides that the power shall not extend to the game, fish, and fur seal laws, or "to the laws of the United States providing for taxes on business and trade. * * * Provided, * * * that this provision shall not operate to prevent the Legislature from imposing other and additional taxes or licenses." It is argued that this proviso permits the imposition of taxes or licenses additional to those which are imposed by the United States on trade and business. This grant of power to tax, however, must be read in the light of the Organic Act of the territory and settled principles of law established by the courts. The Organic Act contains the limitation which is found in all territorial organic acts, that no tax shall be imposed upon the property of the United States, and the decisions of the Supreme Court have firmly established the rule that no state or territory has power to lay a tax on a means or instrumentality used by the United States in the performance of a duty appertaining to it. The tax here in question is not a tax upon the property of the plaintiff in error. It is an occupational or privilege tax. Alaska Fish Salting Co. v. Smith, 255 U. S. 44, 41 Sup. Ct. 219, 65 L. Ed. 489. The tax, if permitted, might be destructive of the means adopted by the government to carry out its purposes and obligations. Telegraph Co. v. Texas, 105 U. S. 460, 26 L. Ed. 1067; Farmers Bank

v. Minnesota, 232 U. S. 516, 34 Sup. Ct. 354, 58 L. Ed. 706; Choctaw, O. & Gulf R. v. Harrison, 235 U. S. 292, 35 Sup. Ct. 27, 59 L. Ed. 234.

The plaintiff in error argues that the Indians on Annette Island are not and never have been, since their settlement there, a "tribe of Indians"; that their descendants by virtue of their birth on the island became American citizens, that the Alaskan natives who joined them were likewise not an Indian tribe, and that the Island never became an Indian reservation. As we view the questions necessary here to be decided, we think the fact that the Indians are not tribal, and the fact, if it be a fact, that the majority of the Indians on the island are citizens of the United States by virtue of their having been born on the soil of the United States, are immaterial, for although such Indians may be citizens, they are still subject to the care and protection of the United States. Winton v. Amos, 255 U. S. 391, 41 Sup. Ct. 342, 65 L. Ed. 684. The inhabitants of the Island, being Indians, stand in the same relation to the United States as do Indians on other reservations. Nor is it material that the Metlakahtla Indians were British subjects· before their immigration to the United States. Congress has made that fact immaterial here. Alaska Pacific Fisheries v. United States, 248 U. S. 78, 39 Sup. Ct. 40, 63 L. Ed. 138. The government has always recognized these Indians as its wards. The Act of March 3, 1891, declares that Annette Island be "set apart as a reservation" for their use. Nor was the Secretary of the Interior without authority to execute the lease to the packing company. He was empowered to make rules and regulations for the government of the Indians in the occupation of the island. Such regulations so authorized by Congress have the force of law. In re Kollock, 165 U. S. 526;[1] United States v. Foster, 233 U. S. 515, 34 Sup. Ct. 666, 58 L. Ed. 1074; McKinley v. United States, 249 U. S. 397, 39 Sup. Ct. 324, 63 L. Ed. 668. "The general rule is that statutes passed for the benefit of dependent Indian tribes or communities are to be liberally construed, doubtful expressions being resolved in favor of the Indians." Alaska Pacific Fisheries v. United States, supra. In that case, the court held that the purpose of the reservation was to safeguard and advance "a dependent Indian people dwelling within the United States," citing United States v. Kagama, 118 U. S. 375, 6 Sup. Ct. 1109, 30 L. Ed. 228, and United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532. There can be no question therefore but that the Metlakahtla Indians are wards of the government. They are dwelling on the island at the sufferance of the government and on land which belongs to the United States. The purposes sought to be accomplished by the government are the same as its purposes for all Indian reservations, to encourage, assist, and protect the Indians in their efforts to acquire habits of industry, become self-supporting, and advance in the ways of civilized life.

[2] Question is made of the authority of the Secretary of the Interior to intervene in the action. Section 873 of the Compiled Laws of Alaska permits intervention of any one who has an interest in the matter of litigation or in the success of either of the parties. We think it clear that the Secretary of the Interior had the right to intervene to protect the Indians and to sustain the lease which he had made and

[1] 17 Sup. Ct. 444, 41 L. Ed. 813.

which was an instrumentality of the government for their benefit. But it is immaterial here whether or not there was technically a right of intervention. The case was heard in the court below upon an agreed statement of the facts. It was the duty of the court to render judgment upon the facts stated, and, if the court had reached the conclusion that the Secretary was not properly an intervener, it had the right to regard the contention and argument of the Secretary as that of an amicus curiæ.

The judgment is affirmed.