## In re REO MOTOR CAR CO.
### No. 24816.

District Court, E. D. Michigan, S. D.
Oct. 3, 1939.

William Henry Gallagher and Frank Fitzgerald, both of Detroit, Mich., for the debtor.

Miller, Canfield, Paddock & Stone, Ferris D. Stone and Louis H. Fead, all of Detroit, Mich., for the Creditors' Committee.

C. Stewart Baxter, of Detroit, Mich., for Howard A. Flogaus, a claimant.

Alva M. Cummins and Charles Cummins, both of Lansing, Mich., for Charles A. Poxson and Edward Brewer, creditors.

Ross Thompson, of Lansing, Mich., for S. Karpen and Brothers, claimants.

Robert H. Winn and Joseph L. Weiner, both of Washington, D. C., Louis S. Pierce and C. J. Odenweller, Jr., both of Cleveland, Ohio, for Securities & Exchange Commission.

Shields, Ballard, Jennings & Taber, Edmund C. Shields, Byron L. Ballard, and David R. Bishop, all of Lansing, Mich., for trustee, Theodore I. Fry.

LEDERLE, District Judge.

A voluntary petition for reorganization, in accordance with the provisions of Chapter X of the National Bankruptcy Act as amended, 11 U.S.C.A. § 501 et seq., was filed December 16, 1938, on behalf of the Debtor corporation in accordance with a resolution adopted by the board of directors of the said corporation and duly signed by Thomas Campbell as chairman of said board. This petition was approved by the court on December 17, 1938, and a temporary trustee appointed.

General appearances were entered by attorneys representing the Debtor corporation and by various individual creditors and stockholders. A creditors' committee representing a majority in amount of all outstanding creditors' claims against the corporation was formed. This committee has been represented by very able counsel. He in turn has assisted very materially in the attempts of the court to solve the problems of the Debtor corporation, and has at all times acted in complete cooperation with the court and all parties in interest.

At the outset of the proceedings at the request of the court, the Securities and Exchange Commission entered its appearance by its attorneys. The attorneys for the Commission aided and assisted by competent auditors and accountants have worked diligently in the interest of the stockholders and have rendered very valuable assistance to the court.

The petition for the reorganization disclosed that the debtor was unable to function further without reorganization because of an absence of working capital, and, although solvent, was unable to meet its debts as they matured. The serious condition of the company became apparent to the officers and directors as early as July, 1938, and at that time the Board of Directors gave consideration to making an application to the Reconstruction Finance Corporation for a loan. The company was able to continue in business during the following months only by liquidating the inventory then on hand and manufacturing trucks to use up these supplies. On or about November 1, 1938 this source of capital was used up and it became apparent to all concerned that future operations of the company were absolutely dependent upon securing additional working capital and steps were taken looking toward securing temporary finances from a bank and a long-term loan from the RFC. While these efforts were being made a stockholders' suit was filed in the State Court seeking a receiver for the company, and certain creditors refused to deliver merchandise to the company. The directors recognized that while this suit was pending there would be no possibility of securing either the temporary loan or the long-time financing. Under the law of Michigan the State Court would have authority to appoint a receiver and order the assets of the corporation liquidated and the proceeds thereof distributed.

On February 4, 1939, the Board of Directors of the debtor, then composed of Thomas Campbell, Chairman, Pierce W. Bradley, John B. Moore, James P. Smith, George Stowe, and Howard Flogaus, approved and authorized the filing of an amended petition in this court, and also ratified and confirmed the action of this court in the granting of all petitions filed by the temporary trustee.

Motions were filed to dismiss the proceedings by various creditors. The hearing on these motions started on February 6, 1939. It soon became apparent to the court that if this litigation was not terminated promptly it would result in serious damage to the company, and at the suggestion of counsel a recess was taken and all of the parties by their respective attorneys went into conference. As a result of lengthy negotiations all of the parties agreed to a stipulation which was read in open court. This stipulation provided that the petition for reorganization complied with the requirements of Chapter X of the Bankruptcy Act as amended, and provided that the then Board of Directors resign and that the new Board of Directors selected by the conferees be substituted therefor. It was further provided that when the old board of directors resigned that the state court proceedings would be dismissed.

The new Board of Directors selected in accordance with this stipulation held frequent meetings, records of which were kept in the regular minute book of the corporation. This board consulted with the trustee and concurred with the trustee in the selection of a new general manager, and at these meetings considered carefully plans for rehabilitating the company. It appeared to the court that with this new Board of Directors, made up of conscientious, able men, the company might be saved without further court action.

Before this board had an opportunity to demonstrate what it could accomplish, Thomas Campbell, the former chairman of the board, with the aid of E. J. Hall set out to secure proxies to elect some men of their choice on the Board of Directors to be chosen at the annual stockholders' meeting to be held on April 18, 1939. In order to secure proxies they assured the stockholders that they had $1,000,000 available for use if their men were elected. At the stockholders' meeting the votes were almost equally divided between the

so-called Campbell group and new board of directors. As a result four of the Campbell group of directors were elected and four of the Board of Directors selected by the conference were re-elected. Thereupon the by-laws of the corporation were amended to provide for nine directors and the Campbell group selected one additional director.

The minute book of the corporation does not show that this Board of Directors ever held a meeting. Evidence was offered, however, at a later hearing in the court that a meeting was held on May 13, 1939, and at this meeting the board was divided between the Campbell group and the other directors on most of the material matters considered. At this meeting the board adopted a resolution fixing the third Monday of each month for the regular meetings of the board. It appears that no such regular meetings of the board were held. A special meeting of the board was held August 8 at which only the directors selected by the Campbell group were present, and the only business conducted at this meeting was to authorize counsel who had entered his appearance for Thomas Campbell and other stockholders to act on behalf of the corporation and file a motion to transfer the case from Chapter X to Chapter XI of the National Bankruptcy Act and such a motion was filed.

On August 20, 1939, E. J. Connolly, one of the directors selected by the Campbell group, died. No meeting has been held since that date to fill this vacancy in the Board of Directors. It is apparent that if the board remains divided four to four it will be impossible to fill this vacancy without a special meeting of the stockholders. On July 31, 1939, the court requested that the new Board of Directors furnish the court and the trustee with a copy of the minutes of its meetings in writing. This request was never complied with.

Shortly after the annual meeting counsel for Thomas Campbell admitted that they were unable to raise the million dollars which had been promised in the proxy's letters.

It became apparent to the court that additional working capital could not be secured by the newly elected Board of Directors and the trustee was instructed to apply to the Reconstruction Finance Corporation for a loan to be used as working capital in the manufacture of trucks and buses in accordance with the plan of production set forth by the trustee. This plan contemplated the manufacture of at least 6,600 units. Six thousand six hundred units can be produced under the plan of production filed as part of the application to the Reconstruction Finance Corporation by utilization of the $2,000,000 applied for as working capital and without loss to the Reo Motor Car Company. During the time that the trustee was negotiating for this loan the court gave its permission to the new Board of Directors and its counsel to continue their efforts to secure the additional working capital. Up to the date of the hearing on Thursday, September 28, 1939, the new Board of Directors had not been able to secure any financing or any satisfactory commitment for financing and it is obvious that the only place such funds can be secured is from the Reconstruction Finance Corporation.

By letter dated September 13, 1939, the Reconstruction Finance Corporation advised the trustee that it would make a loan to the debtor upon the compliance by the debtor with the terms and conditions set forth in the letter and embodied in the plan for reorganization under Paragraph VII.

One of the terms and conditions imposed by the Reconstruction Finance Corporation in connection with its proposed loan is a management satisfactory to the Reconstruction Finance Corporation during the period of the loan. The plan of reorganization, in order to provide such management and guarantee continuity thereof, provides that a new corporation shall be formed, and that all of the stock of the new corporation shall be turned over to three voting trustees named by the court, and that the voting trustees or their successors shall continue in office for the life of the loan, and that the Board of Directors of the reorganized corporation shall be selected by said voting trustees. This voting trust will cease as soon as the loan is repaid, but during the time that this obligation is outstanding the directors will be selected by these trustees.

Although the debtor is not insolvent it is impossible for it to continue in business without working capital, and any plan of reorganization which does not provide for such working capital is not feasible and cannot be approved by this court.

Proofs taken herein show that beginning in 1937 Thomas Campbell and Rowland Campbell began a campaign to secure control of the Reo Motor Car Company. Rowland Campbell was made chairman of the board and chief executive officer of the debtor on December 20, 1937. The Campbell brothers gradually assumed full control of the Debtor corporation's affairs, causing the Board of Directors to amend and change the by-laws relative to the officers' duties and number of directors and place of meeting to suit their plans and purposes, although Thomas Campbell ceased to be a stockholder of the company in 1937. On or about August 13, 1938, all except two of the Board of Directors were placed thereon by the Campbells; and Rowland Campbell, in addition to being chairman of the board, was made general manager, and an attempt was made to give him a five-year contract as manager at $25,000 per year. Prior to the time he became active in Reo's affairs Rowland Campbell had had no experience in manufacturing. He had been active mainly in operating dry goods stores. None of the other directors selected to represent the Campbells had had any experience in the manufacturing business. In 1937 the company lost $1,982,293; in 1938 the company lost approximately $2,400,000. These losses were due in part to the fact that the company was selling its manufactured goods at less than the cost of production. It appears from the record that the management had lost sight of the fact that the majority in control of the corporation must use the utmost good faith in the management and control of its affairs, and that it was the essence of this trust that it must be so managed as to produce to each stockholder the best possible return on his investment. See Miner v. Belle Isle Ice Co., 93 Mich. 97, 53 N.W. 218, 17 L.R.A. 412; Veeser v. Robinson Hotel Co., 275 Mich. 133, 266 N.W. 54.

On or about December 1, 1938, Thomas Campbell again became a stockholder by the purchase of approximately 11,000 shares of stock.

During the time that these proceedings have been in court the trustee has maintained the sales organization; made favorable settlement of two long-term leases which were costing the debtor large sums annually and has practically completed tools and dies for a new truck so that the company will be ready to start production of these new trucks as soon as the loan of $2,000,000 is paid over to the corporation. The trustee has also kept the plant in operation so that service could be supplied to its dealers and if present business conditions continue it will be possible to sell enough units to operate at a profit.

The trustee has also paid all taxes, charges of operation, cost of new tools and dies, and now has on hand about $325,000 in cash. When the debtor filed its petition herein it had only about $17,000 in cash. In order to be prepared to proceed immediately and to keep the plant in operation the court has instructed the trustee to seek bids on its products from responsible purchasers.

Prior to the trusteeship no adequate inventory had been taken for many years and no adequate cost accounting system set up. Under the trustee the general manager has taken an inventory and has made accurate estimates of costs so that in the future it will be possible to accurately estimate the cost of the finished product before the manufacture is undertaken.

In order to secure the working capital it has been necessary for the trustee to amend his proposed plan several times. In the form that it is approved, it provides for segregating certain assets for the protection of creditors. As soon as these creditors are paid off the remainder of these assets will be returned to the corporation. There are no bonds or debentures outstanding and no preferred stock. The only creditors are the trade creditors who had not been paid at the time this petition was filed.

The Securities and Exchange Commission approved the plan as fair, equitable, and feasible in open court on September 28, 1939. This plan cannot be put into operation, however, until the requisite number of stockholders and creditors file their written acceptance in accordance with the provisions of the National Bankruptcy Act.

■ The plan is fair, equitable, and feasible and without such a plan the debtor will be forced to liquidate its assets and go out of business.

■ Counsel for Thomas Campbell and other stockholders have opposed the plan in its present form and a hearing on their objections was held in open court for several days starting on September 20, 1939, and concluding September 28, 1939. A

proposed amendment to the plan, signed by William Henry Gallagher, Campbell's attorney, was filed, providing in part that two of the voting trustees should be named by E. J. Hall and one by Ernest C. Smith rather than by the court. The apparent purpose of this amendment is to continue the Campbell domination and control over the affairs of the Reo Motor Car Company. Considering the terms and conditions of the Reconstruction Finance Corporation commitment and believing that further domination of the company by Thomas Campbell should be avoided, the court does not deem this amendment worthy of consideration and it is not to be submitted to the creditors and stockholders.

■ The petition herein was properly filed under Chapter X of the Bankruptcy Act as amended, as this court has hitherto held in approving said petition and in an order entered February 9, 1939, denying the motion of Charles A. Poxson and Edward A. Brewer to dismiss the proceeding. The court cannot now, as it could not at the time it ruled on the matters just enumerated, permit its determination of the propriety of its jurisdiction to be limited and circumscribed by what the Debtor or others may allege as the necessary scope of relief in a plan of reorganization. Under the amendatory Bankruptcy Act of June 22, 1938, 11 U.S.C.A. § 1 et seq., and the Congressional intention determinative in its construction as evidenced by the language and content of Chapter X and Chapter XI thereof, 11 U.S.C.A. §§ 501 et seq., 701 et seq., and by the Congressional hearing and reports relating to such chapters, the appropriate and only proper Chapter which may be utilized for the reorganization of corporations with publicly held securities, such as the Debtor, is Chapter X of said Act. Among other considerations in Chapter X, the Congress enacted provisions expressly designed to supply safeguards in the interest of members of the public holding securities of corporations undergoing reorganization. No comparative provisions in the public interest were incorporated in Chapter XI. Among the measures which the Congress included only in Chapter X are those which provide for participation by the Securities and Exchange Commission, formulation of plans by disinterested trustees and examiners, approval of plans before solicitation of assents thereto and increased jurisdiction in the court

to control the activities of protective committees.

The appropriate and only proper chapter which may be utilized for the reorganization of corporations with publicly held securities, such as Debtor, is Chapter X of said Act. It therefore follows that the petition to remove this proceeding from one under Chapter X to one under Chapter XI of said Act must be denied and an order to that effect may be entered.

The plan of reorganization being fair, equitable, and feasible, and meeting the requirements of Sec. 216 of the amended National Bankruptcy Law, 11 U.S.C.A. § 616, may be submitted to the creditors and stockholders for acceptance, in accordance with Sec. 174 of the amended Bankruptcy Law, 11 U.S.C.A. § 574, and an order to that effect may be entered.

A copy of these findings shall be submitted with the plan of reorganization to the creditors and stockholders.