**KROELL et al. v. NEW YORK
AMBASSADOR, Inc.**

No. 61.

Circuit Court of Appeals, Second Circuit.

Dec. 18, 1939.

Benjamin C. Ribman, of New York City (McInnes & Gamble and Hamilton McInnes, all of New York City, on the brief), for appellants.

Godfrey Goldmark, of New York City (Rosenberg, Goldmark & Colin and Herman Jervis, all of New York City, on the brief), for appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

A preliminary question arises herein as to the jurisdiction of the court to consider on the merits a proposed amendment to an involuntary petition for reorganization of a corporation after a motion for dismissal of the petition had been granted. Appellee claims that under In re Glory Bottling Co. of New York, 2 Cir., 283 F. 110, 112, a bankruptcy court has no jurisdiction to consider an amendment to an involuntary petition after it has been dismissed.

Here the original petition against the appellee, filed January 28, 1939, was dismissed on February 2, 1939, because, as the court said, it did not comply with the requirement of 11 U.S.C.A. § 531 (that the petition must state one of five grounds therein specified). Then a new petition was filed asking, among other things, that this order "be nullified" and an amendment be permitted, which, under date of March 3, was denied. The court in a short memorandum indicated its willingness to accept a proper amendment, for it referred to the fact that at the previous hearing counsel stated he could not make his petition any stronger by amendment, and it also pointed out that good practice would require the submission of the proposed amended petition with the application to amend. Those petitions are not in the record, and our information as to them is limited to the court's statements and other references made to them in the affidavits considered below. Apparently pursuant to this suggestion of the court, appellants filed the present petition, dated March 13, 1939, to serve an attached amended petition for reorganization. The court heard this petition and overruled appellee's objection of lack of jurisdiction, but refused leave to file the amended petition on the ground that it still failed to show one of the statutory requirements for the proceedings.

In re Glory Bottling Co. of New York, supra, does not go so far as to deny all jurisdiction to a bankruptcy court to proceed under circumstances such as are here disclosed. Under the circumstances there presented—where permission to amend under certain conditions had been granted and the petition was "then deliberately abandoned by failure to conform with the conditions upon which amendment was permitted"—the court held there was no "power" in the district court to order the default opened and a "so-called" amended petition filed in place of "the abandoned insufficient petition." That power was not used in the sense of fundamental jurisdiction of the court is, however, indicated not merely by these particular circumstances of failure to conform to the granted permission, but also by the statements in the opinion just prior to this holding: "There may also be cases where, through some accident or mistake, a petition is dismissed. For instance, there may be an inadvertent default when a cause is called for trial upon the issues raised by a petition in involuntary bankruptcy and the answer thereto. In such circumstances the court, of course, would have the ordinary powers possessed by the court in other causes, and might open the default in the exercise of a sound discretion."

The case therefore actually upholds the power of the bankruptcy court, sitting as a court of equity, to reopen defaults in its discretion. This appears to be the settled rule. Wayne United Gas Co. v. Owens Co., 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557, held that a court of bankruptcy had power in the exercise of sound discretion to reopen an order dismissing a petition for reorganization even after the time for appeal had expired. Sabin v. Blake-McFall Co. et al., 9 Cir., 223 F. 501, held an amendment allowable after dismissal of

the petition; and White v. Bradley Timber Co., D.C.S.D.Ala., 116 F. 768, supported the power, though it denied the amendment offered. The power was also supported in Re Bieler et al., 2 Cir., 295 F. 78, where it was held that an involuntary petition insufficient because acts of bankruptcy were alleged only generally in the words of the statute could be amended. See also Pugh & Beavers Grocery Co. v. International Shoe Co., 4 Cir., 288 F. 556; In re Jemison Mercantile Co., 5 Cir., 112 F. 966. It follows naturally from both the court's general equity powers (cf. Pepper v. Litton, 60 S.Ct. 238, 84 L.Ed. ——, December 4, 1939) and its well settled powers—under Bankruptcy Order XI, 11 U.S.C.A. following section 53, or Equity Rule 19, 28 U.S.C.A. following section 723, or again from equity generally—to permit amendments of involuntary proceedings, even to the supplying of jurisdictional averments. In re Haskell, 7 Cir., 73 F.2d 879; In re Claudon, 7 Cir., 73 F.2d 876 (amendment allowed in 1934 of involuntary petition filed in 1927); Fierman v. Frankfort Broom Co., 3 Cir., 69 F.2d 827; In re Yellow Motor Co., 8 Cir., 34 F.2d 118, certiorari denied 280 U.S. 590, 50 S.Ct. 38, 74 L.Ed. 639; In re Plymouth Cordage Co., 8 Cir., 135 F. 1000; International Bank v. Sherman, 101 U.S. 403, 25 L. Ed. 866; Armstrong v. Fernandez, 208 U.S. 324, 28 S.Ct. 419, 52 L.Ed. 514.

[3] It would be anomalous, indeed, if the mere omission of leave to amend in the order holding the original petition insufficient had the effect of depriving the court of jurisdiction which it otherwise had to allow an amendment. The decisions to the contrary are reasonable; they are now more in point than ever in the light of the present Bankruptcy Order XI and the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which by Bankruptcy Order XXXVII apply in so far as they "are not inconsistent" with the Act or the bankruptcy orders. Federal Rule 60(b) states a definite procedure, under which the court, on motion made within six months, may relieve a party from a judgment, order, or proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect. This rule may indicate the proper grounds upon which a court may act in reopening a decree. Whether it is available for a full six months in the summary procedure of bankruptcy, we need not now determine. In the case at bar the court disclosed its willingness to reopen the decree for a proper amended petition. We may assume that this was a justified exercise of discretion and, since we hold that the court had jurisdiction under the doctrine of Wayne United Gas Co. v. Owens Co., supra, we may proceed to a consideration of the appeal on the merits.

The present respondent was formed pursuant to a plan of reorganization of the Ambassador Hotel Corporation approved by the District Court in 1936. Proceedings to that end had been pending since an attempted foreclosure in 1931 and involved much litigation, in which the appellants participated as objecting bondholders. This is a further attempt by them to secure reorganization of this hotel property along lines they desire. The extensive affidavits filed below on this petition contain violent and acrimonious charges and countercharges of bad faith which seem to be quite irrelevant to any issues before us. The issue actually presented is narrow and is merely the question whether the petitioners now show facts sufficient under 11 U.S.C.A. § 531 to force a corporation into reorganization under Chapter X of the present Bankruptcy Act.

Under this statute, petitioners, in addition to a showing that the corporation is insolvent or unable to pay its debts as they mature, must also show at least one of five grounds therein stated, of which the fourth and fifth grounds are here important. They are as follows: "(4) that a proceeding to foreclose a mortgage or to enforce a lien against all or the greater portion of the property of the corporation is pending; or (5) that the corporation has committed an act of bankruptcy within four months prior to the filing of the petition." The fourth was the ground chiefly relied on below and considered by the District Court. This was based upon the admitted facts that there are real property taxes owed by the alleged debtor to the City of New York, and that the city has advertised for sale a tax lien against the property. It was therefore claimed that there was pending a proceeding by the city to enforce a lien against the corporation's property for these overdue taxes.

Appellee's affidavits show that it had been making monthly payments on the unpaid taxes and that the sale was therefore being adjourned each month. It presented a statement from the city collector referring to an arrangement made some months

ago by him that, if payment were made from time to time on account of arrears of taxes, in consideration of such payment, the postponements would be granted, and that they would continue to be granted as the payments were continued. Since payments were being continued at the time of the filing of the petition below, it would appear as a matter of practical fact that the city was not now attempting to enforce its lien against the debtor's property.

Petitioners, however, assert that the mere fact of advertising the tax liens for sale is sufficient to show the pendency of such enforcement proceedings. Such a conclusion must depend upon the meaning of the particular provisions of the New York City Charter and Administrative Code appearing in Laws of New York 1937, Ex.Sess. c. 929, § 415(1)—10.0 and 23.0 to 42.0. This court had occasion to consider these provisions in American Brake Shoe & Foundry Co. v. Interborough Rapid Transit Co., 2 Cir., 98 F.2d 72, wherein an order was sought to prevent the City of New York from selling a tax lien against the property of the Manhattan Railway Company on the ground that no permission for such sale had been obtained from the receivership court. The court declined the stay, for the reasons that the sale of the tax lien involved no interference with the property itself, but was merely a transfer of the obligation, and hence permission by the court for the sale was not necessary. The court analyzed the charter provisions above cited and pointed out that the city could take no action to enforce the collection of taxes until some of them had been overdue for three years or more. Then the city officials might advertise that the tax liens would be sold at public auction, and if so sold, the purchaser might receive interest on the tax liens until maturity at the rate, not exceeding 12 per cent, which he had set forth in his bid. If there were no bidders, the city might become the purchaser without payment. Only at the end of three years did the tax lien mature, and if unpaid at maturity it might then be foreclosed; the lien holder had the option of accelerating the maturity of the lien if the tax debtor failed to pay current interest, at the rate set forth in the bid, or current taxes. Thus, the sale of the tax lien offered a way by which the city could raise money immediately on the taxes (if it found a bidder), but it was not a proceeding actually looking to the taking of possession of the property to satisfy the lien. That could be begun when the lien matured three years hence or upon a default of its terms by the tax debtor.

We think this case points to the result here to be reached and shows that there is no proceeding pending actually to enforce the lien until after its maturity or foreclosure is begun. N.Y.Laws 1937, Ex. Sess. c. 929, § 415(1)—39.0. The purpose of the reorganization statute appears to be to provide for court administration of property when it is actually about to come under the control of a particular creditor through enforcement of his lien, and hence would hardly be applicable when the actual foreclosure is either three years hence or awaits a default of the debtor. Appellants cite cases to show that a distraint by action of the tax authorities may be considered a proceeding to enforce the tax. But as the cases cited show and as is well known from the history of our law, a distraint involves an actual seizure of the property. Bowers v. New York & Albany Lighterage Co., 273 U.S. 346, 349, 352, 47 S.Ct. 389, 71 L.Ed. 676; Boyd v. Howden, 3 Daly, N.Y., 455; and cf. also Flavin v. Partello, 132 Misc. 325, 229 N.Y.S. 578; Marshall v. Wadsworth, 64 N.H. 386, 10 A. 685; Baird v. Belcher, 59 N.D. 559, 231 N.W. 548. Nothing remotely approaching such a seizure is shown by a sale of the city's legal lien without disturbance of the debtor's property ownership.

The other ground somewhat pressed is, as alleged, that an act of bankruptcy was committed by the corporation in transferring, while insolvent, portions of its property to one or more of its creditors "with intent to prefer such Creditors over its other Creditors." This, however, is but the general language of the Bankruptcy Act, 11 U.S.C.A. § 21, sub. a, which, as shown by the cases cited earlier on the question of amendment, has been regularly held insufficient as an allegation. See also In re Rosenblatt & Co., 2 Cir., 193 F. 638; International Silver Co. v. New York Jewelry Co., 6 Cir., 233 F. 945; In re Mason-Seaman Transp. Co., D.C.S.D.N. Y., 235 F. 974. Since the petitioners had several opportunities, aided by the admonitions of the court, to perfect their allegations, we should not attempt to piece out facts additional to these general allegations. Petitioners do say, "Its [debtor's] own Profit and Loss Statement shows that it has paid some creditors but has failed to

pay others, particularly its largest Creditor, the City of New York." If this means anything, it is merely an attempt to draw inferences from debtor's formal accounting statements showing failure to pay taxes in full, though the reorganization plan itself provided for delay, at least until January 1, 1939, and, as we have seen, the city is now accepting partial payments on account of the taxes. Under the circumstances the intent necessary under the Act cannot be either spelled out or inferred.

Affirmed.