### In re UNITED STATES REALTY & IMPROVEMENT CO.

### SECURITIES AND EXCHANGE COMMISSION v. UNITED STATES REALTY & IMPROVEMENT CO.

### UNITED STATES REALTY & IMPROVEMENT CO. v. SECURITIES AND EXCHANGE COMMISSION.

#### No. 178.

Circuit Court of Appeals, Second Circuit.

Jan. 15, 1940.

CLARK, Circuit Judge, dissenting.

White & Case, of New York City (Joseph M. Hartfield, Joseph A. Bennett, Henry M. Marx, and Charles W. Dibbell, all of New York City, of counsel), for debtor.

Chester T. Lane, Gen. Counsel, and Martin Riger, Samuel H. Levy, and Raoul Berger, all of Washington, D. C., George Zolotar, of New York City, Homer Kripke and Irving S. Rogers, both of Washington,

D. C. (J. Anthony Panuch, of New York City, of counsel), for Securities and Exchange Commission.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

This is a proceeding for an arrangement under chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq. It was commenced by petition filed by United States Realty and Improvement Company, hereafter called the debtor. The debtor is a New Jersey corporation having its principal place of business within the city of New York; its business consists in the management and ownership of investments in real estate. It has substantial assets and liabilities and its capital stock and certain other securities are outstanding in the hands of the public. By this proceeding it seeks to obtain an extension and modification of one class of its unsecured obligations, namely, its guaranty of the publicly held mortgage certificates, in the amount of some $3,700,000, of its subsidiary, Trinity Buildings Corporation of New York (for brevity hereafter called Trinity); all other unsecured obligations the debtor proposes to pay as they fall due. The mortgage against which the guaranteed certificates were issued was to mature June 1, 1939, and the debtor's plan contemplates that the mortgagor, Trinity, will institute a proceeding under the Burchill Act, sections 121–123, N. Y. Real Property Law, Consol.Laws N.Y. c. 50, in a state court to obtain a modification of the mortgage to conform it to the debtor's guaranty as modified under the arrangement.

By order entered on May 31, 1939, the date of the filing of the debtor's petition, the district court found, among other things, that the petition was properly filed under section 322 of the Act, 11 U.S.C.A. § 722, and directed that the debtor be continued in possession of its assets and that a meeting of its creditors be convened before the court on June 28, 1939. Early in July counsel for the Securities and Exchange Commission obtained permission from the district judge to present as amicus curiae the contention that the order of May 31st should be vacated and the proceeding dismissed for lack of jurisdiction. As amicus curiae, counsel for the Commission pressed the argument at several hearings that the debtor could not properly file a petition for an arrangement under chapter XI but must resort to a reorganization under chapter X, 11 U.S.C.A. § 501 et seq., because it had securities outstanding in the hands of the public. After the judge had indicated that this contention would not be sustained, the Commission moved for leave to intervene in the proceeding for the purpose of moving to vacate the order of May 31st, to deny confirmation of the debtor's proposed arrangement and to dismiss the proceeding. After further argument the court, on July 28, 1939, entered three orders. The first granted the Commission leave to intervene for the purpose of contesting jurisdiction of the court over this proceeding under chapter XI, "and for the purpose of enabling the said Commission to appeal from any order made in this proceeding with respect thereto"; the second denied the motions of the Commission to vacate the order finding the debtor's petition to have been properly filed under section 322 and to dismiss the proceeding for lack of jurisdiction; and the third referred the proceeding to one of the referees in bankruptcy for such action as is required and permitted by the Bankruptcy Act. From the two latter orders the Commission appealed; subsequently the debtor appealed from the order allowing intervention. Thereafter the debtor moved in this court to dismiss the Commission's appeals. This motion was reserved until argument of the appeals.

These appeals raise interesting questions as to the inter-relations of chapters X and XI of the Chandler Act and as to the right of the Securities and Exchange Commission to intervene in an arrangement proceeding under chapter XI. If it be assumed that the Commission is properly here as an appellant, a majority of the court is of opinion that the orders from which it has appealed are right. The Commission attacks the jurisdiction of the court upon the theory that where a corporation seeks to effect an arrangement with respect to unsecured debts which are held by the investing public, as are the guaranteed certificates representing shares in Trinity's mortgage, it must proceed under chapter X and the court lacks jurisdiction to entertain a proceeding under chapter XI. However desirable such a limitation of the scope of an "arrangement" proceeding might be thought to be, we can find no warrant for it in the words of the statute or the history of the legis-

lation.[1]  Subdivision 1 of section 306, 11 U.S.C.A. § 706 (1), provides that "arrangement" shall mean any plan of a debtor for the settlement, satisfaction, or extension of the time of payment of his unsecured debts, upon any terms; and subdivision 3 defines debtor to mean a person who could become a bankrupt under section 4 of this Act, 11 U.S.C.A. § 22, and who files a petition under this chapter. The debtor is a person who could become a bankrupt under section 4.  Concededly, therefore, the literal words of the statute authorize this proceeding.  It may well be that the framers of the legislation contemplated that the arrangement procedure of chapter XI would be more likely to be availed of by small corporations and the reorganization procedure of chapter X by large corporations[2]; but no such limitation was written into the statute.  Nor do we see any compelling reason for saying that a "large" corporation cannot obtain adequate relief under chapter XI because of the existence of outstanding securities in the investing public.  Indeed, the statute seems to give preference to an arrangement proceeding, for it is provided in section 130 (7) that a petition under chapter 10 must state "the specific facts showing the need for relief under this chapter and why adequate relief cannot be obtained under Chapter XI [11] of this Act [title]."  See, also, §§ 146, 147, 11 U.S.C.A. §§ 546, 547.  The latter section provides that a petition for reorganization improperly filed because adequate relief can be obtained by the debtor under chapter XI may be amended to comply with the requirements thereof and thereafter be deemed to have been originally filed thereunder.  No corresponding provision is found in chapter XI.  There, section 376(2), 11 U.S.C.A. § 776(2), provides for adjudication of bankruptcy or dismissal of the proceeding if confirmation of the arrangement is refused.  Accordingly, we find nothing in the statute to justify acceptance of the contention that the court lacked jurisdiction to entertain this proceeding.  To read into chapter XI the limitation that it may be invoked only by small corporations without publicly held securities requires legislation rather than judicial interpretation.  Whether the proposed arrangement meets the requirements necessary for confirmation (section 366, 11 U.S.C.A. § 766) is a matter unrelated to jurisdiction and one upon which the district court will later have to pass when the issue of confirmation is presented.  We express no opinion concerning it at the present time.

We pass now to the right of the Commission to intervene in a chapter XI proceeding.  No section of that chapter confers such right.  Section 208, 11 U.S.C.A. § 608, however, expressly authorizes intervention by the Commission in a chapter X proceeding upon request of the judge or upon its own motion if approved by the judge, but forbids it to appeal from any order entered in such a proceeding. The inclusion in chapter X of express permission to intervene and the omission of such a provision in chapter XI raises a strong implication against intervention by the Commission in the latter type of proceeding.  In an arrangement proceeding the Commission has no advisory duties to perform such as are provided in section 172, 11 U.S.C.A. § 572.  The Commission argues that in order to protect its right to intervene in a chapter X proceeding it must be allowed to intervene in any chapter XI proceeding which it believes ought properly to have been brought under chapter X.  But this proceeds upon the false premise that the Commission has a present right to protect.  It has no such right.  Its only right is to intervene if a chapter X proceeding is pending.  Until such a proceeding is instituted, the Commission has no interest whatever to protect.  It cannot require a chapter X proceeding to be instituted, if the present chapter XI proceeding be defeated.  Dismissal of the present proceeding would not necessarily result in a chapter X proceeding by either the debtor or its creditors; neither it nor they are com-

---

[1] This question has been much discussed in periodical articles.  See Competing Systems of Reorganization, 48 Yale L. J. 1334 and articles therein cited; The Need for Amendment of the Chandler Act, Am.Bankruptcy Rev., Vol. A 3, p. 35, Oct. 1939.

[2] The report of the Judiciary Committee to the House with respect to H.R. 8046, stated with respect to chapter XI, which combines features of sections 12 and 74: "The inclusion of corporations will permit a large number of the smaller companies such as are now seeking relief under section 77B but do not require the complex machinery of that section, to resort to the simpler and less expensive, though fully adequate, relief afforded by section 12." House Report, 75th Cong. 1st Sess., pp. 50–51.

pelled to initiate any court proceeding, and if one were initiated it might be in straight bankruptcy rather than in reorganization. The case at bar is not like those of Pennsylvania v. Williams, 294 U.S. 176, 55 S. Ct. 380, 79 L.Ed. 841, 96 A.L.R. 1166, and Gordon v. Ominsky, 294 U.S. 186, 55 S.Ct. 391, 79 L.Ed. 848, in each of which the intervening representative of the Commonwealth of Pennsylvania claimed a right to the full possession and control of the assets of the insolvents, not merely a right to advise or to protect the public interest. The Commission has no special interest to protect by intervention in the proceeding at bar.

■ Nor will its general interest in the welfare of holders of Trinity's mortgage certificates guaranteed by the debtor serve as a legitimate ground for intervention. A governmental agency has no general right of intervention "in the public interest." 2 Moore's Fed.Prac., p. 2327. We find nothing in Rule 24 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c or in the authorities cited in the briefs that points to a different conclusion. In one group of cases relied upon to support a general right of intervention in the government, the government claimed ownership of the land involved—a direct pecuniary interest—Stanley v. Schwalby, 147 U.S. 508, 13 S.Ct. 418, 37 L.Ed. 259; Percy Summer Club v. Astle, C.C. N.H., 110 F. 486; Winola Lake & Land Co., Inc. v. Gorham, D.C.M.D.Pa., 17 F.Supp. 75; or held title to the land in question as trustee for the Indians. Brewer-Elliott Oil & Gas Co. v. United States, 260 U.S. 77, 43 S.Ct. 60, 67 L.Ed. 140; Territory of Alaska v. Annette Island Packing Co., 9 Cir., 289 F. 671. There was also a direct pecuniary interest in the cases in which the Commissioner of Internal Revenue was allowed to intervene in stockholder suits to enjoin the payment of taxes on the ground of the unconstitutionality of the taxing statute. Helvering v. Davis, 301 U.S. 619, 57 S.Ct. 904, 81 L.Ed. 1307, 109 A.L.R. 1319; Davis v. Boston and M. R. R. Co., 1 Cir., 89 F.2d 368; Norman v. Consolidated Edison Co. of New York, 2 Cir., 89 F.2d 619. In New York v. New Jersey, 256 U.S. 296, 41 S.Ct. 492, 65 L.Ed. 937, the United States intervened to protect its absolute control over navigable waters and its interest in adjacent public property which would be affected by the outcome of the suit. See page 308, of 256 U.S., 41 S. Ct. at page 492, 65 L.Ed. 937. Nor does Florida v. Georgia, 17 How. 478, 15 L.Ed. 181, support the Commission's views. There the only question was whether the fact that the suit was between two states forbade intervention. See page 492 of 17 How., 15 L.Ed. 181. In The Exchange, 7 Cranch 116, 3 L.Ed. 287, the United States never attempted to intervene as a party; it merely, through the United States attorney, filed a "suggestion," and was heard. The question of the United States attorney's right to appeal does not seem to have been raised. On the other hand, cases dealing generally with the right to intervene have demanded an interest in the result of the litigation of a direct and immediate character; the intervenor must stand to gain or lose directly by the decision of the court. See Smith v. Gale, 144 U.S. 509, 12 S.Ct. 674, 36 L.Ed. 521; Lombard Inv. Co. v. Seaboard Mfg. Co., C.C.S.D.Ala., 74 F. 325, 326; Glass v. Woodman, 8 Cir., 223 F. 621, 622; Moore's Federal Practice, pp. 2307 et seq. A somewhat analogous rule holds that one seeking review in the Supreme Court of a state court judgment must have a personal as distinguished from an official interest in the relief sought, and in the federal right alleged to be denied. Marshall v. Dye, 231 U.S. 250, 257, 34 S.Ct. 92, 58 L.Ed. 206. The order permitting intervention brought up by the debtor's appeal should be reversed.

■ In considering at the outset the orders from which the Commission appealed we assumed for purposes of discussion that the Commission was properly an appellant. That assumption is challenged by the debtor's motion to dismiss. Had this proceeding been instituted under chapter X and had the district judge decided that adequate relief could be obtained under a chapter XI proceeding and thereupon permitted an amendment of the petition and allowed the proceeding to continue as though originally filed thereunder, the Commission, though it had properly been allowed to intervene in the chapter X proceeding, could not have appealed from the order which determined that adequate relief could be obtained under a chapter XI proceeding. Section 208. That being so, it would be strange indeed if, after erroneously being allowed to intervene in the proceeding at bar, it could appeal from an order denying its motion to dismiss the proceeding. It would seem that the impli-

cation of section 208 not only forbids intervention in a chapter XI proceeding but also forbids appeal if intervention is erroneously permitted therein. But however that may be, we think the appeals should be dismissed because the Commission is not aggrieved by the orders appealed from; it has no interest that is affected by the litigation. In Commercial Cable Staffs' Association v. Lehman, 2 Cir., 107 F.2d 917, decided November 20, 1939, we held that intervention erroneously granted to an intervenor having no interest in reorganization litigation, gave it no right to appeal from orders approving the plan of reorganization. The motion to dismiss the Commission's appeals is granted. The order of intervention is reversed.

CLARK, Circuit Judge (dissenting).

Chapter X was designed to insure the reorganization of large corporations with a maximum of safety for the investing public. Chapter XI was enacted to permit the rehabilitation of small commercial enterprises with a maximum of convenience for the oppressed debtor. Quite naturally, there are vast differences in both method and result between the procedures of the two chapters. Especially significant is the close judicial and administrative supervision over the activities of all persons specified by Chapter X, compared with the freedom of maneuver permissible under Chapter XI. I do not believe we are justified in opening a hole in the Chandler Act, 11 U.S.C.A. § 1 et seq. through which great corporations may escape from Chapter X. And I think it particularly unfortunate to do so by (as it seems to me) disregarding the interrelation of these two chapters, when read together in the light of their purpose, for a literal and mechanical interpretation of a section or two of the Act specifying who may be bankrupts.[1]

I believe that X and XI are mutually exclusive, that a corporation which is amenable to one is not amenable to the other, and that the proper place for the United States Realty and Improvement Company is in a X proceeding. If this

much be so, it was the duty of the district court, on its own motion or as soon as the matter was in any way called to its attention, to dismiss the XI petition.

Though the debtor contends otherwise, it seems hardly open to argument that had this company filed a voluntary petition under X, or had an involuntary petition been filed against it under X, the district court would have found it necessary to approve the petition as properly filed. The corporation's deficit stands at $18,000,000. It has assets, based on June 1, 1939, market values, of $7,076,515, and liabilities of $5,551,416, excluding the contingent liability of over $3,800,000, the modification of which is the sole object of this XI proceeding. There are almost 900 individual investors holding the share certificates representing this contingent liability. Public investors are interested in other debenture issues of the debtor, due in 1944, and the company's stock, of which 900,000 shares are outstanding, is listed and traded in on the New York Stock Exchange. In view of the corporation's size, character, and degree of insolvency, the appropriateness of a Chapter X proceeding, had a Chapter X proceeding been initiated, could not be denied.

Under § 146(2) of Chapter X, 11 U.S. C.A. § 546(2), a petition filed under that Chapter may not be approved if the judge believes that adequate relief would be obtainable under Chapter XI. Had this debtor filed a Chapter X petition, the court would have been compelled to make an affirmative finding that adequate relief could not be obtained under XI. If the initiation of a X proceeding by this debtor would necessarily have led to such a finding, the same finding should be made when, as here, the debtor has filed under XI. The adequacy of relief under XI is clearly the same issue whether it arises in the setting of a Chapter X petition or in the setting of Chapter XI.

It is true that there is no provision in Chapter XI authorizing the court to dismiss petitions as improperly filed. But there is no such provision in the sections of

[1] A dissent ought to be brief, and therefore and because it is so well known, I refrain from recounting the persuasive legislative history of the law. Suffice it to say that the Chandler Act was passed after unusual study, including the extensive report of the Securities and Exchange Commission (pursuant to the direction of Congress) on the evils of past reorganization practices, and after a long congressional campaign, wherein every conceivable objection to the new procedure was pressed on the legislative body with the utmost vigor and persistence.

the statute dealing with ordinary bankruptcies, and yet petitions have been dismissed and adjudications have been vacated over and over again, on grounds that were jurisdictional and on grounds that were not. See, particularly, In re Nash, D.C.S.D.W. Va., 249 F. 375; Blackstock v. Blackstock, 8 Cir., 265 F. 249; Vassar Foundry Co. v. Whiting Corp., 6 Cir., 2 F.2d 240, 241 ("whether or not this objection is called jurisdictional, it is one upon which creditors must have a right to be heard"). This follows the well settled view that a bankruptcy proceeding is, after all, an action in equity and subject to the rules governing suits in equity. Pepper v. Litton, 60 S. Ct. 238, 84 L.Ed.——; Kroell v. New York Ambassador, Inc., 2 Cir., 108 F.2d 294.

Whether a corporation with securities so widely and publicly held, with investors so scattered, so numerous, that they cannot be given adequate protection under the machinery of XI, can secure adequate relief for its financial distress, and whether any plan inaugurated under those limited auspices can properly satisfy the requirements of fairness, equity, and feasibility required under § 366 before the court may approve it is an issue which the court must face and adjudicate. It is suggested, however, that this is not a matter of jurisdiction. Just what that chameleon word actually means here is not clear. If it means safe from collateral attack, that may be conceded. Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104. If it means a necessary prerequisite to judicial action, then we are dealing with jurisdictional requirements. Without placing too much emphasis on a question-begging label, we can say that here we are dealing with prime necessities of judicial action, and that whenever the court finds they are not present, it is its duty to cease to act.

My brothers do not now choose to consider whether this debtor could properly have filed under Chapter X; instead they say that so long as the debtor could become a bankrupt, it has an indefeasible privilege to file under XI. Without discussing whether they are precluding the approval of a petition under X as to this debtor, they add that they see no reason why "a large" corporation with publicly held securities may not obtain adequate relief under XI. "Adequate relief" is a flexible phrase, but presumably it refers to relief for all the parties to the reorganization. "Adequate relief" is also an empty phrase, as empty as its companion "fair and equitable," until its meaning has been filled in by a series of judicial decisions. It seems to me clear that the investing public cannot obtain adequate relief in a Chapter XI proceeding; such, indeed, is the whole meaning and purpose of the safeguards imposed by Chapter X. An independent trustee is not required under XI, as it is under X; investors may not propose plans under XI, as they may under X; acceptances may be solicited prior to confirmation under XI, as they may not under X; voters are not entitled to the S. E. C.'s disinterested advice as an experienced financial counsel, as they are in X. Additional differences in protection can be and have been pointed out. In re Reo Motor Car Co., Debtor, D. C. E. D. Mich., 30 F.Supp. 785.

In addition to the problems presented by the wide public ownership of the debtor's securities, note may be made of another consideration which prevents these creditors from obtaining adequate relief under Chapter XI. It may be easily demonstrated that this debtor is insolvent. On the debtor's own figures, its assets barely exceed $7,000,000, while its liabilities total $5,551,416, without including the "contingent" liability of $3,800,000 here to be modified. The principal obligation which the debtor guaranteed matured on June 1, 1939, and this indebtedness is no longer contingent, as the institution of the XI proceedings so clearly shows. Since the company is insolvent, application of the principles of Northern Pacific Ry. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931, demands that the stockholders be eliminated, for their equity has disappeared, they have made no new cash contribution, and the preservation of their interest is not shown to be essential to the successful continuation of the enterprise. Case v. Los Angeles Lumber Products Co., 60 S.Ct. 1, 84 L.Ed. ——.

Yet Chapter XI affords no method of eliminating stock interests, unless it be by importing the bankruptcy sale. Section 357, 11 U.S.C.A. § 757, specifying what an arrangement may include, makes no mention of provisions affecting stock. That the principles of the Boyd case are nevertheless applicable to proceedings under Chapter XI can hardly admit of doubt; an arrangement may not be confirmed unless it is found to be "fair and equitable and feasible," § 366 (3), 11 U.S.C.A. § 766 (3), words which

we are told are words of art, incorporating the rules laid down in Northern Pacific Ry. v. Boyd, supra; Case v. Los Angeles Lumber Products Co., supra. If creditors of this debtor may invoke the Boyd case in XI to eliminate the stockholders, yet find the machinery of XI powerless to accomplish the elimination, they may plausibly contend that in XI they cannot obtain adequate relief. And if the Boyd case is not the law of Chapter XI,[2] perhaps that fact alone would be sufficient reason for declaring that for this debtor and its creditors,[3] the relief offered by XI is inadequate.

If my brothers are correct it is possible for any large corporate debtor, untroubled by the necessity of adjusting a secured debt, to choose between proceeding under Chapter X and under Chapter XI. Far too often XI will be chosen, because of its undoubted swiftness and its happy immunity from judicial and administrative control. A temporary palliative for an incurable financial disease may often be obtained under XI by adjusting a single indebtedness, and the usually optimistic management may put off for a time the evil day of reckoning when the drastic remedies of Chapter X become inescapable. Here the district judge announced from the bench that he was of the opinion that a Chapter X reorganization would be preferable, and, upon being assured by counsel for a creditor group that an involuntary X petition would be filed immediately, he stated his intention to dismiss the XI proceeding. Counsel for the debtor and for other creditors interposed, and in open court counsel for the debtor agreed to make an immediate interest payment of 1½ per cent, for the admitted purpose of dissuading the creditor from filing a petition under X. The creditor consented, the court approved, and the XI proceedings were continued.

Since the district court, though questioning the success of this proceeding, felt, nevertheless, that it must let it go on to its doubtful conclusion, I would return the order denying dismissal and the order of reference for a reëxamination of the problem in the light of the principles just stated. Moreover, since these views lead me directly to the conclusion that the S. E. C. has an important public responsibility of which it cannot be relieved merely by the device of initiating a proceeding designed to exclude it, I think the court exercised a wise and sound discretion in authorizing the Commission to intervene. The cases cited in the opinion to the contrary seem to me merely to support a conclusion from an accepted premise, not to demonstrate the soundness of the choice of premise. Under the view of the Commission's public obligations which I have suggested, cases such as Pennsylvania v. Williams, 294 U.S. 176, 55 S.Ct. 380, 79 L.Ed. 841, 96 A.L.R. 1166, and Gordon v. Ominsky, 294 U.S. 186, 55 S.Ct. 391, 79 L.Ed. 848, afford direct support of the order below.

Moreover, my brothers have limited their search to one for an absolute right of statutory intervention and overlook the provisions for permissive intervention in the discretion of the court, which are so important and salutary a feature of the new procedure. The references in the opinion to Professor Moore's treatise on Federal Practice (2 Moore's Federal Practice 2307, 2327) are limited to those discussing either past history or the absolute right and overlook the more apposite material showing the power of the court to act whenever the intervenor presents a claim or defense which has a question of law or fact in common with the main action and the desirability of such action when thereby important questions will be authoritatively adjudicated and further litigation avoided. 2 Moore's Federal Practice 2331–2333, 2350–2366; Levi and Moore, Federal Intervention, 45 Yale L.J. 565; Federal Rule 24 (b) (2). I have stated elsewhere my concern at what seems to me undue limitation of these wise provisions. Commercial Cable Staffs' Ass'n v. Lehman, 2 Cir., 107 F.2d 917. See also 49 Yale L. J. 590, 593, 594. Here are important questions, the ultimate decision of which cannot be avoided. Here and now is the appropriate occasion for their disposition.

---

[2] For a discussion of the applicability of the Boyd case to Chapter XI, see 48 Yale L.J. 1334, 1357–1362.

[3] The Boyd case will not prevent successful arrangements under XI in corporate situations where creditors can maintain the business as a going concern only by conceding the preservation of existing stock interests. This will be the case, and XI will be appropriate, in every small commercial enterprise where management and stock are identical; it will be less and less the case, and XI will be inappropriate, as the particular business is larger and management and the ownership of stock become the functions of different people.

The final question, whether the Commission may appeal, seems to me more difficult. The curiously truncated privilege of intervention, without the privilege of appeal, given the Commission in Chapter X, § 208, suggests a like limitation here. Why this unusual restriction on intervention was adopted may not be altogether clear; but it seems designed to emphasize the ultimate judicial character of corporate reorganization. So the Commission must place its report on a plan before the court, but the action to be taken thereon is a judicial responsibility entirely. When the Commission intervenes to point out that an arrangement cannot be substituted for a reorganization, a similar restriction on the right of appeal may well be imposed. Here, however, the intervention was for another purpose, the settling of a vital point of statutory construction, something which cannot be accomplished without appeal. Since the general rules of intervention do not prohibit appeal, the court's further order allowing appeal for a specific purpose seems not unreasonable.

Since the district court allowed intervention for the one purpose of testing the court's jurisdiction in the light of the statute, the order of reversal here, strictly speaking, may not prevent intervention on the issue of feasibility of a proposed arrangement. But the language of the opinion goes to the extent of such a prohibition, indeed of any action by the Commission so long as the corporation is within the seclusion of an XI proceeding. This I deplore. It renders the Commission impotent for the public interest in a large class of cases and goes far to render abortive what might have proved one of the most important corporate reforms of modern times.