### In re CREDIT SERVICE, Inc.
### No. 9340.

District Court, D. Maryland.
Jan. 18, 1940.

Gustav F. Sanderson and Edward L. Ward, both of Baltimore, Md., for debtor.

Samuel H. Levy, Robert H. Winn, and James L. Campbell, all of Washington, D. C., for Securities & Exchange Commission.

CHESNUT, District Judge.

This is a proceeding under Chapter XI of the Bankruptcy Act of 1938, 52 Stat. 905, 11 U.S.C.A. § 701 et seq. The debtor is Credit Service, Inc., a Delaware corporation, which has had its principal office and business in this district for more than six months past. It is essentially merely a holding company with assets consisting largely of stock in subsidiaries, some of which are engaged in the small loan business. It has outstanding $5,000,000 par value of unsecured 6% certificates of indebtedness, sometimes called debenture bonds, dated February 1, 1923, maturing in 1948. After some years of apparently successful business its net income is now not sufficient to continue to pay the interest on these unsecured debentures. On October 21, 1939 it filed a petition in this case proposing an "arrangement" with the holders of these debenture bonds, whereby it proposed to give to the holders thereof "in full satisfaction of each $100 in principal amount of said bonds, and interest in respect thereto accruing from August 1, 1939, and all profit share certificates which may accompany said bonds the following securities, viz: (a) One share of preferential capital stock of Consumers Credit Service, Inc., entitled to $100 per share in liquidation and to annual cumulative preferred dividends the amount of $6. per share; and (b) Two shares of common capital stock of said Consumers Credit Service, Inc." Consumers Credit Service, Inc., is said to be a subsidiary of the petitioner, Credit Service, Inc.

When the petition was presented by counsel ex parte, it seemed to comply with the requirements of Chapter XI, and therefore an order was passed approving the petition, authorizing the debtor to continue its business, upon giving a bond, and referring the case to the referee as is specifically authorized by Chapter XI, § 331, 11 U.S.C.A. § 731.

On November 4, 1939 the Securities and Exchange Commission filed a motion for leave to intervene in the case for the purpose of moving to vacate the order and to dismiss the proceeding. On the same day the Commission filed a motion to dismiss on the ground (1) that the court did not have jurisdiction over the proceedings because Chapter XI of the Bankruptcy Act does not apply to a corporation such as the debtor, *which has securities outstanding in the hands of the public;* and (2) because the arrangement proposed could not be deemed to comply with the provisions of Chapter XI in that it could not be considered for the best interests of the creditors and fair, equitable and feasible and therefore could not be considered to have been filed in good faith.

Upon hearing in due course upon these motions counsel for the Commission were requested by the court and did argue both of them concurrently as amicus curiae. At the same time counsel for holders of about $350,000 par value of the debentures, who were allowed to intervene, also moved to dismiss the proceeding substantially on the grounds advanced by the Commission. Briefs having been filed by counsel and the matter further considered, I have reached the conclusion that the motion of the Commission to intervene as a party to the case, and also the motions to dismiss the pro-

ceeding, must be denied. However, I repeat the invitation previously extended at the hearing, to counsel for the Commission and to the Commission itself, to continue to act in the case as amicus curiae. But I understand they decline to continue in the case on that basis.

■ As to the petition of the Commission to intervene, it is to be noted that intervention is now regulated by Rule 24 of the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; and General Order in Bankruptcy No. 37, 11 U.S.C.A. following section 53, makes the Federal Rules of Civil Procedure, applicable to bankruptcy practice unless inconsistent with the Bankruptcy Act. In my opinion rule 24, Federal Rules of Civil Procedure does not authorize the intervention of the Commission in this case either as a matter of right or permissively. It is argued for the Commission that it wishes to intervene as a matter of public duty in the interest of the several thousand widely scattered holders of the debtor's debentures; but the only purpose of the requested intervention is to move to dismiss the proceeding. And as I have reached the conclusion after hearing argument by counsel for the Commission on the motion, that it should be denied, there seems to be no point of importance as to the motion for intervention except possibly the right of appeal from the refusal to dismiss. Even this does not seem to be of great importance, because some of the debenture holders, who have been allowed to intervene and have moved to dismiss, can if they desire appeal from this order if properly appealable; and on such appeal counsel for the Commission can request the Court of Appeals for leave to argue the case there as here as amicus curiae. But however that may be, I have a doubt as to the policy of granting leave to the Commission to intervene merely for the purpose of appealing from the refusal of the motion to dismiss, if the interested parties do not themselves desire to appeal. However I am glad to state that the argument on motions to dismiss made by counsel for the Commission has been very helpful to the court in bringing out the points in the case for consideration, and the court would be glad to have the continued participation of the Commission in further proceedings in the case. There is also at least some doubt as to whether intervention should be allowed merely for the purpose of attacking the fundamental basis of the proceeding.

Rule 24 was taken largely from the former equity rule 37, 28 U.S.C.A. following section 723, under which it was generally held that the intervenor would not be permitted to attack the basis of the proceeding itself; or in other words that the intervention "must always be in subordination to the original suit". United States v. California Co-operative Canneries, 279 U.S. 553, 556, 49 S.Ct. 423, 73 L.Ed. 838; Union Trust of Pittsburgh Co. v. Jones, 4 Cir., 16 F.2d 236, 239. In the discussion of the proposed Federal Rules of Civil Procedure at the Cleveland Institute, Dean (now Circuit Judge) Clark, who was a member of the Supreme Court Advisory Committee, in discussing rule 24 stated that the limitation in equity rule 37, that the intervention must be in subordination to the main proceeding, lacked clarity and precision and was intentionally omitted from the new rule. He added: "So we have left out that form of expression but have attempted to clarify the situation rather generally by a little more detail and a little more classification." See discussion at the Cleveland Institute, page 265; and Vol. 2, Moore's Federal Practice under the New Federal Rules, pp. 2326, 2373.

■ On the motion to dismiss, a somewhat elaborate argument has been presented by counsel for the Commission to the effect that it was never intended by Congress that Chapter XI should be available to a debtor corporation having a substantial amount of *securities outstanding in the hands of the public;* and that Chapter XI was intended to be available only to *small corporations* which have no outstanding securities. It is pointed out that Chapter XI in the Bankruptcy Act of 1938 (which was long under consideration by Congress before its passage) replaces sections 12 and 74 of the former Act, 11 U.S.C.A. §§ 30, 202, which it is said were commonly availed of only by individuals and corporations which had incurred indebtedness in ordinary course of business but had no outstanding securities. At least one case to the contrary is, however, to be noted: Realty Associates Securities Corp. v. O'Connor, 295 U.S. 295, 55 S.Ct. 663, 79 L.Ed. 1446, where the debtor made a composition under section 12 of the old Act, 11 U.S.C.A. § 30, with creditors in amount aggregating more than $12,000,000, principally bonded indebtedness publicly held.

The legislative history of the new Chapter XI, in comparison with Chapter X, 11

U.S.C.A. § 501 et seq., is referred to at some length. Chapter X of course deals with *corporate reorganizations,* and it is the contention of the Commission that it alone is applicable to a debtor having securities outstanding in the hands of the public, as in this case. It is doubtless true in a general sense that it was the *expectation* of the respective proponents of Chapters X and XI that Chapter X would be utilized by corporations having secured indebtedness and a *complex financial structure* which required reorganization; while Chapter XI would be available for simpler financial situations where a mere reduction in amount or extension of maturity of indebtedness or other non-complicated arrangement would suffice. But I think it is not really permissible to allow this general expectation to control the clear wording of Chapter XI which by its language is fully applicable to the present situation. In 48 Yale Law Journal, p. 1334 (1939) in an article entitled "Competing Systems of Corporate Reorganizations," it is said:

"In its large way, Congress intended Chapter X for the *reorganization of big corporations,* and Chapter XI for the relief of small debtors, incorporated and unincorporated. But the forty-odd experts who worked eight years revising the Act omitted from it any formula for determining which corporate debtors should be rehabilitated under Chapter X and which under Chapter XI. As things stand, Chapter X and Chapter XI offer alternative *systems* for the *reorganization* of corporations generally, and it is established practice for similar corporations, in comparable financial difficulties, to be reorganized under either Chapter."

And on page 1365 of this article, it is further said:

*"So far as the naked words* of the statute go, any person who may become a bankrupt under section 4 of the Bankruptcy Act may file a petition under Chapter XI. There is *no discrimination* between corporations in defining the terms of access to Chapter XI. The Act has no test of *largeness or smallness, quantitative or otherwise* to justify a court in refusing jurisdiction to a small corporation under Chapter X. And it provides *no direct* procedure by which a court can refuse jurisdiction under Chapter XI *to a big corporation or to any other."*

There are clear provisions in Chapter X that it shall not be available to corporate debtors seeking reorganization unless they can definitely and clearly show the need for relief under that Chapter and why adequate relief cannot be obtained under Chapter XI. Sections 130(7), 146, 147, 11 U.S.C.A. §§ 530(7), 546, 547. Chapter XI does not contain a similar provision.

A comparison of Chapter X with Chapter XI shows that to a considerable extent they are overlapping and alternative measures for the relief of financially embarrassed debtor corporations. With respect to the so-called jurisdictional requirements in the cases respectively, both are applicable to some corporations, although there are very material differences in procedure. Chapter X deals with a plan for the *reorganization* of a corporation, which may materially affect the status of both secured and unsecured debts; while Chapter XI deals with an arrangement proposed by either a corporation or an individual, but only *unsecured* debts can be affected. It results in a general way that complicated financial adjustments of corporate securities can be made only under Chapter X, while Chapter XI is available for simpler financial arrangements. The result is no doubt unusual; but is probably explainable in that it is said that the drafting of the two chapters respectively was done by separate persons who approached the matter from somewhat different standpoints. Thus it is said (48 Yale Law Journal, pp. 1335–36) that "Chapter X is principally the work of the Securities and Exchange Commission; while Chapter XI, on the other hand, is the achievement of a campaign carried on by the National Association of Credit Men and other groups of creditors' representatives expert in bankruptcy."

The legal problem here presented is, however, comparatively simple. The question is merely whether the present debtor's situation is within the scope of Chapter XI. In substance, so far as we are here concerned, it provides that a debtor who is insolvent or unable to pay his debts as they mature may file a petition accompanied by certain financial statements and proposing therein an arrangement with his creditors to affect unsecured indebtedness. If the petition is in form and approved by the court the proceedings may be referred to a referee and upon notice a creditors meeting is called at which the debtor can be examined and a creditors committee and counsel thereto may be appointed; and after approval or acceptance of the ar-

rangement proposed by a majority of creditors and after due notice the arrangement may be confirmed if the court, among other things, finds it for the best interests of the creditors and that it is fair, equitable and feasible, and that the proposal and its acceptance are in good faith. The critical question here is merely whether the present debtor is one who is entitled to file the petition; and whether the arrangement proposed is within the scope of the Chapter. In my opinion these questions must be answered in the affirmative. Section 306(1), 11 U.S. C.A. § 706(1), defines an arrangement as follows:·

"'Arrangement' shall mean any plan of the debtor for the settlement, satisfaction, or extension of the time of payment of his unsecured debts, upon any terms."

And section 356, 11 U.S.C.A. § 756, provides—

"'An arrangement' within the meaning of this chapter shall include provisions modifying or altering the rights of unsecured creditors generally or of some class of them, upon any terms or for any consideration."

This is clearly broad enough to include the arrangement here proposed which is in substance an exchange of debenture bonds for preferred stock of another corporation. Section 306(3) defines the term "debtor" as follows:

"'Debtor' shall mean a person who could become a bankrupt under section 4[22] of this Act [title] and who files a petition under this chapter".

It is not disputed that the debtor in this case comes within this definition.

The concrete contention of the Commission in this case is that Chapter XI is inapplicable where the debtor has outstanding publicly held securities. There is no language that I have been able to find in the chapter which either expressly or by clear implication contains this limitation. It can only be supplied by adding some such wording to the definition of the word "debtor" or the definition of the word "arrangement". These definitions are, however, clearly and all-inclusively worded in the sections from which they are quoted, and they do not contain the important limitation which the Commission proposes to have read into them. In my opinion it is not legally permissible to supply by construction, where the language as used is clear, such an important qualification. There is

here no room for construction at all. Osaka Shosen Kaisha Line v. United States, 300 U.S. 98, 101, 57 S.Ct. 356, 81 L.Ed. 532; United States v. Missouri Pac. R. Co., 278 U.S. 269, 277, 49 S.Ct. 133, 73 L.Ed. 322; Helvering v. City Bank Farmers Trust Co., 296 U.S. 85, 89, 56 S.Ct. 70, 80 L.Ed. 62. Furthermore, the language sought to be supplied is itself vague and indefinite in its meaning, as it does not plainly define what shall constitute outstanding publicly held securities either in kind or in amount, or as to the number of holders. It seems to me quite impossible to supply such wording by construction based only on such legislative history as we have in this case.

The gist of the argument for the Commission, that Chapter XI is not applicable except to small corporations having no outstanding securities held by the public, is that there are not sufficient safeguards in the procedure provided for in Chapter XI to properly advise and care for the interests of the security holders. In this connection it is pointed out that Chapter X makes much more adequate provision to that effect, particularly in the required appointment of a disinterested trustee where the outstanding debt is more than $250,000, and for the intervention of the Commission and its investigation and advice where the indebtedness is more than $3,000,000. It is, however, not correct to infer that Chapter XI does not make provision for full information and protection of the interests even of numerous and scattered creditors. Provision is made for notice to creditors, examination of the debtor, and the appointment of a creditors committee to investigate and participate; and the arrangement proposed cannot be confirmed unless it has been approved by a majority of the creditors and it is determined by the court that the arrangement is fair, equitable and feasible. When it is borne in mind that the arrangement proposed can affect only *unsecured* debts, and therefore is necessarily limited to comparatively simple financial arrangements, it does not appear that the safeguards of Chapter XI in the interests of the creditors are necessarily insufficient. Doubtless it is true that Chapter X provides more efficient machinery for investigation and advice to the court than may be the case under Chapter XI; but this of itself is not a sufficient reason for denying to debtors relief under Chapter XI if their situation comes within its provisions. It would of course be preferable to the court

to have the additional assistance of a disinterested trustee and the efficient investigation and advisory report of the Commission, but the possibly greater responsibility with respect to the final confirmation of the arrangement imposed upon the court cannot be avoided if, in the wisdom of Congress, the debtor's case falls properly within the provisions of Chapter XI.

 It is also argued for the Commission that the present proceeding should be dismissed because it is even now at the inception of the case apparent that the arrangement proposed is not in good faith and therefore cannot be ultimately confirmed, even if the majority of the creditors approve it. Some part. of the argument seems to be ·that Chapter X is so obviously the proper procedure for the debtor in this case that it must be inferred it deliberately chose the alternative of Chapter XI rather than Chapter X for the purpose of avoiding the more thorough and efficient investigation of its affairs by a disinterested trustee and the Commission. But I do not think I would be warranted in drawing such an inference at this time. Counsel for the debtor state that before filing the petition they gave careful consideration to the question as to whether they should proceed under Chapters X or XI; and they noted the provisions of Chapter X that it was to be available only if Chapter XI would not afford adequate relief, and for that reason, as well as to avoid the probably much greater expense of a proceeding under Chapter X, they elected to proceed under Chapter XI. It is also said by counsel for the Commission that the debtor is obviously insolvent and therefore the provision of the plan for the arrangement which contemplates continued existence of the stock of the debtor is manifestly improper in view of the recent decision of the Supreme Court in Case v. Los Angeles Lumber Products, Lt., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. ——, Nov. 6, 1939. . As to this the debtor replies that it will shortly propose an amendment to the plan to eliminate this difficulty. At this time it seems unnecessary to express any opinion on the particular point. If and when the procedure in the· case reaches the point of application to the court for confirmation of an arrangement, the more substantial questions in the case on the merits will, of course, receive ·careful consideration.

For these reasons I conclude the motion to intervene should be denied, and the motion to dismiss should be overruled. These results are in accord with the very recent opinion of the Circuit Court of Appeals for the Second Circuit, Circuit Judge Clark dissenting, in the similar case of In re United States Realty & Improvement Co., 108 F.2d 794, a copy of which has been sent me by the courtesy of counsel for the Commission.

Counsel may present the appropriate orders in due course.