### In re CREDIT SERVICE, Inc.
No. 9340.

District Court, D. Maryland.

March 16, 1940.

980

Edward L. Ward and Gustav F. Sanderson, both of Baltimore, Md., for debtor.

Rignal W. Baldwin, Jr., of Baltimore, Md., and Irving H. Lessen, of Syracuse, N. Y., for creditors' committee.

Jacob S. New, of Baltimore, Md., and Samuel Weinrott, of Philadelphia, Pa. for petitioner Antonio D'Urbano.

CHESNUT, District Judge.

The present question arises under Chapter XI of the Chandler Bankruptcy Act of 1938, and relates particularly to the matter of appointment of a creditors' committee provided for in section 338 of Chapter XI, 11 U.S.C.A. § 738.

When the debtor's petition for an arrangement with its creditors was filed in this case, it was approved as to form and referred to the referee as specifically authorized by section 331, 11 U.S.C.A. § 731. Shortly thereafter the Securities & Exchange Commission filed a petition for intervention and a motion to dismiss the proceeding, on the ground that the nature of the case was such that the proceeding should have been brought only under Chapter X, 11 U.S.C.A. § 501 et seq. The motions were denied. See In re Credit Service, Inc., D.C., 30 F.Supp. 878. A like conclusion in a similar case had been reached by the Second Circuit, In re United States Realty & Improvement Co., 108 F.2d 794. In the latter case a petition for certiorari is, I understand, now pending in the Supreme Court.

The referee promptly proceeded with the administration of the case and held a first meeting of creditors on November 6, 1939, and an adjourned meeting on December 19 and 20, 1939, at which latter time the creditors elected a committee. The creditors present in person or by attorney nominated several different committees and on the ensuing vote it was found that no one of the several committees had received a majority of votes cast by creditors holding a majority of claims both in amount and in number. The votes of a number of creditors (voting by proxy) had been challenged on the ground that the votes had been obtained in substance by and for the interests of persons closely connected with the management of the corporation; and after taking testimony on this point the referee concluded as a fact that the votes should be rejected on that ground. As a result the committee of which Mr. Alexander Randall is chairman was declared by the referee to have received a majority in number and amount of creditors properly voting. The Randall Committee received the votes of 267 creditors holding principal value of claims in the amount of $613,200. The disallowed votes that had been cast for the Foley Committee represented 340 creditors with claims aggregating $542,900. A small number of claims (4) representing in amount $22,000 was voted for another committee. Two creditors holding $6,500 of claims voted in opposition to the appointment of any committee. Creditors voting for the Foley Committee whose votes were rejected by the referee because obtained for the management of the corporation, have apparently acquiesced in the proceeding as they have not petitioned for review. The only petitioner for review is Samuel Weinrott, a Philadelphia lawyer, who held a power of attorney from a Philadelphia client holding claim in the amount of $5,000. The principal points presented by his petition to review the referee's proceedings are that the referee should not have permitted any voting for the several committees before first taking vote of all creditors as to whether they wished a committee appointed; and a further ground of error assigned is the rejection by the referee of votes for the Foley Committee. It is to be noted, however, that the referee did not disallow vote on the claim of Mr. Weinrott who alone petitions for review. In connection with the petition for review the referee has filed a certificate reciting in detail the whole of the proceedings and the substance of the testimony before him in the matter and has also filed separately a memorandum of law in support of his

ruling which disqualified the votes for the Foley Committee. After hearing counsel in support of and in opposition to the review of the referee's order, and careful study of the referee's certificate of facts and memorandum of law, I conclude that the orders sought to be reviewed should be *affirmed.*

■ In the first place, it is not very clear that the sole petitioner has a sufficient standing with respect to the proceedings questioned to justify a reversal of the referee's orders; nor does it appear that the petitioner has sustained any substantial damage by the order. His vote was not rejected and even if it had been it would not have affected the result. Apparently he opposed the appointment of any creditors' committee. It is apparent, however, the overwhelming majority of disinterested votes, both in number and amount, were in favor of the appointment of a creditors' committee. And it does not appear that the petitioner will be prejudiced by the existence or activities of the committee except possibly in that the expenses of the committee as they may hereafter be approved by the court, may in some small degree diminish the interests of a creditor in the estate. This does not seem at the present time at least to be a very substantial question in view of the nature of the case as a whole.

But assuming that the petitioner has a sufficient standing to question the referee's order, I am satisfied that it should not be reversed. The whole matter, both of law and facts, is so fully and clearly stated in the referee's certificate and memorandum that it is quite unnecessary to review his discussion in any detail. There seem to have been so far no reported cases dealing with the appointment of a creditors' committee under Chapter XI. The statute itself in section 338, 11 U.S.C.A. § 738, provides in substance that the creditors *may* appoint a committee (if none has already been appointed under section 44 of the ordinary Bankruptcy Act, 11 U.S.C.A. § 72). The authority and activities of such a creditors' committee when appointed seem not to have been expressly outlined in Chapter XI except insofar as reference is made to sections 44, sub. a and sub. b. Subsection (a) provides that the general creditors of a corporate bankrupt, *exclusive of its stockholders or members, and of its officers and members of its managing or controlling bodies* shall appoint one or three

trustees; and subdivision (b) provides that creditors who are qualified to appoint trustees may also appoint a committee of not less than three creditors who may consult and advise with the trustees regarding the administration of the estate and make recommendations to the trustee with regard to his duties and submit to the court questions regarding the administration of the estate. Section 337 of Chapter XI, 11 U. S.C.A. § 737, incidentally provides that administration expenses incurred by the committee and its agents or attorneys are to be provided for in the "arrangement" proposed by the debtor corporation in "such amount as the court may allow".

■ I think it reasonably clear from these related provisions of the bankruptcy statute that the creditors' committee under Chapter XI is to be elected in the same way and to have the same status as a creditors' committee in ordinary bankruptcy.

■ The only substantial question at the present time is whether the referee was justified in rejecting the votes cast for the Foley Committee. It is clear enough from the recital of facts made by the referee that these votes had been obtained substantially in the interest of the management of the corporation. The situation, therefore, was for all practical purposes similar to that which has frequently arisen in ordinary bankruptcy where the bankrupt endeavors to control the election of a trustee at a creditors' meeting. The decided cases referred to by the referee in this connection amply support his conclusion that votes obtained in this way by or for the interests of the bankrupt should be properly rejected. See particularly In re Wink, 206 F. 348, D.C.Md., decided by Judge Rose when district judge; Beale v. Snead, 4 Cir., 81 F.2d 970; In re Bloomberg, D. C., 48 F.2d 635, by Judge Sanborn, district judge; Merchants' National Bank v. Continental B. & L. Ass'n, 9 Cir., 232 F. 828; In re Hale Desk Co., 2 Cir., 89 F.2d 1. The Randall Committee declared elected by the referee appears to be an entirely disinterested committee, the members of which were nominated and elected by creditors apparently having no former relation whatever to the management of the corporation as stockholders, directors, officers or otherwise. Their activities to date as stated by their counsel at the hearing on this petition for review, have apparently been in the best interests of the creditors

982

as a whole, and they are in the process of having made an inventory and appraisal of the assets available for the creditors. To this end they have organized, and it appears that the chairman has been giving very active attention for several weeks past to an intensive investigation of the complicated corporate structure of the many subsidiaries and other corporations related to the debtor corporation. While the financial structure of the debtor itself is apparently simple, its principal assets consist of stock interests in numerous subsidiaries or related corporations, most of which it appears are engaged in various more or less distant places in the small loan business. No satisfactory appraisal of the value of these assets can be made until a reliable inventory can be had of the exact amount and status of the holdings of the debtor in these numerous other corporations, and a sufficient audit made of the affairs of the latter, to determine the value of the assets of the debtor; and to be the basis for a fair, equitable and feasible financial arrangement of the debtor or a successor corporation. It is essential that this survey and appraisal should be made by a disinterested and competent committee for the information of and action thereon by the creditors. The financial history of the debtor as so far revealed in this whole proceeding makes this very important to the creditors. It appears the debtor was organized about fifteen years ago and issued debentures or other unsecured obligations from which it received approximately $5,000,000 in money; but that a fairly conservative approximate present appraisal of its real assets indicates a value of probably not more than $1,500,000. It will be of interest and importance to creditors of the Company to learn why this very large shrinkage of capital has occurred, there being no present satisfactory short statement of the causes for the loss. It is not now meant to say or even suggest that losses have been incurred under circumstances justifying explicit criticism of the management, but it is of importance to creditors to learn the real conditions affecting their security. The ultimate object of this whole proceeding is to obtain the approval by the court of a financial arrangement which will be fair, equitable and feasible and in the best interests of creditors. No such arrangement can be confirmed by the court unless and until it has been accepted in writing by a majority in number and amount of creditors with proved and allowed claims, section 362, 11 U.S.C.A. § 762; and even then may not be confirmed by the court unless it is found to be fair, equitable and feasible and is for the best interests of the creditors, and that the debtor has not been guilty of acts which would bar the bankrupt's discharge, section 366, 11 U.S.C.A. § 766. It is fairly obvious that no arrangement proposed by or in the interests of the management alone is likely to receive the approval of disinterested creditors unless and until they are thoroughly satisfied that what is offered to them in exchange for their present claims is fair and equitable and in their interests. Under Chapter XI the creditors' committee seems to be the only effective agency which can act for the creditors in this respect. And without undertaking to pre-judge matters subsequently to come before the court in this whole proceeding, it must also be apparent that this court would not be disposed to confirm an arrangement, even if accepted by a majority of creditors, unless there is an affirmative showing that it is for the best interests of all the creditors and is the result of an intelligent, efficient. and disinterested investigation of the affairs of the debtor.

These circumstances seem to point very clearly to the conclusion that the present petitioner has sustained and will sustain no substantial prejudice by the continued activity of the Randall Committee. It is true that it is incurring and will have to incur in the completion of its work possibly some substantial expenses but this will clearly be in the interests of the creditors. The debtor has so far been continued in the management of the business without the appointment of a trustee or a receiver; and the court has so far had no request from any of the parties in interest to make such an appointment. It appears, however, that the amount of moneys now currently handled by the debtor itself is comparatively small in amount and adequately covered by a $10,000 bond which it has been required to give; and it is said that the more considerable sums of money handled by branch managers of loan offices is protected by fiduciary bonds. If at any time hereafter before the conclusion. of the case, circumstances arise which induce any of the parties in interest to apply for the appointment of a receiver, that. application will, of course, be duly considered by the referee or a judge of this court. I am also informed that arrangement has been made whereby disbursements can be:

made by the debtor only by checks duly signed or approved by the referee. It is further said that the Randall Committee has by negotiation with some of the officers of the debtor corporation, very materially reduced the heretofore prevailing salaries. It is obviously desirable that the expenses of the Committee should be kept at the minimum consistent with a satisfactory investigation of the debtor's affairs; and the court does not doubt that the referee will continue to give his careful and active supervision to the case with that object in view.

The order of the referee is hereby affirmed.